[Philadelphia, February 8th, 1841.]

## DEPEAU *against* WADDINGTON and Others.

### IN ERROR.

1. Although the taking of the note of a third person as collateral security for a pre-existing debt, without more, will not place the taker in the situation of a holder for value, so as to protect him against the equities subsisting between the original parties to the note; yet it is otherwise if there is a new and distinct consideration—as if time was given in consideration of obtaining the note as security for the debt, &c.

2. The plaintiffs, who were creditors of A. to the amount of $1500, held as security for the debt a bond given by a third person to A. for about $2400. A. applied to them for the bond, alleging that he had an opportunity of getting the money upon it, and would with the proceeds pay the amount of his debt to them. The bond was delivered to A. upon this understanding. A few days afterwards A. paid the plaintiffs $800 in cash, and gave them a note drawn by the defendant in his favour for $983, as security for the balance. *Held*, that under these circumstances the note of the defendant was taken upon a sufficient consideration, and therefore that the plaintiffs were entitled to recover against the defendant, although there was no consideration between him and A.

ERROR to the District Court for the City and County of Philadelphia.

Assumpsit by Charles Waddington, Robert S. Robb and David Ogden, partners, under the firm of Ogden, Waddington & Co., against Francis A. Depeau, upon a promissory note, dated New York, January 5th, 1836, made by the defendant in favour of Robinson & Smith, and endorsed by them, at four months, for $983 20.

On the trial, before PETTIT, (Pres't) on the 31st of October, 1839, the plaintiffs gave in evidence the note and a protest thereof.

The defendants then gave in evidence the depositions of J. W. Waring and Sylvester Robinson, Jr., taken at New York, under different commissions there.

In answer to the 2d interrogatory on the part of the defendant, J. W. Waring testified as follows: "I have some knowledge of the note inquired of in this interrogatory; I was not present at the

delivery or making of the said note. Mr. Depeau had given this note to Mr. Robinson for the purpose of getting the note discounted; Mr. Robinson then took this note instead of getting it discounted; and left it as security with Ogden, Waddington & Co., the plaintiffs, for what Robinson & Smith owed them. Mr. Ogden called or sent repeatedly to the store of Robinson, Waring & Co., and the reply from Mr. Robinson was, to Mr. Ogden, that Mr. Depeau had given him this note for goods purchased from Robinson, Waring & Co. or Robinson & Smith, which was the firm previous to my going into it. Mr. Depeau had frequently asked Mr. Robinson what had become of this note. Mr. Robinson replied to Mr. Depeau, that he had torn it up; after Mr. Depeau finding it was not consumed or torn up, Mr. Robinson then replied to him, that he would settle with Ogden, Waddington & Co., and he need not give himself any further uneasiness: all this occurred in my presence."

To the third interrogatory on the part of the defendant, he answered:—" I know this note was offered for discount at the Bank of America and refused; it was offered by Robinson & Smith: the account in the bank was kept by Robinson & Smith: the note was endorsed by them, and also by Robinson, Waring & Co. I have already answered, under the previous interrogatory, all my knowledge in relation to the representations herein mentioned. I don't know that the defendant received any value for the said note from Robinson & Smith, or either of them."

To the fourth interrogatory on the part of the defendant, he answered:—" I know the plaintiffs loaned to Robinson & Smith about the sum of fifteen hundred dollars; I believe it was just that sum: I don't recollect what time the loan was made; it was previous to my going into the concern; I joined the concern in the middle of January, 1836. The plaintiffs had as security a bond made by Edward G. Miller to Thomas M. Smith, one of the partners of Robinson & Smith; I think it was for twenty-three or twenty-four hundred dollars, or twenty odd hundred dollars; I cannot tell exactly the amount. Robinson & Smith repaid a part of this, somewhere about eight hundred dollars, I think; I don't recollect what time this was paid: the bond was taken away. Mr. Robinson told Mr. Ogden or some one of the partners, that he wanted to take this bond away, as he wanted to get it discounted; I was with Mr. Smith myself at the time; I went down with him to the plaintiffs; the bond was given up and I got it discounted; the note in question was left with the plaintiffs as security for the balance; this I know of my own knowledge: the note was not left to be discounted by them but as security for the balance of the loan."

To the fifth interrogatory on the part of the defendant, he answered: " I have nothing more to say than that the note was left as security

(Depeau v. Waddington.)

until the balance was paid; they did not give any new credit, nor make any new advances."

Sylvester Robinson, Jr., in answer to the defendant's second interrogatory, testified, that he had knowledge of the note mentioned and described in this interrogatory; that he was present at the making and delivery of the note; that the note was so made and delivered to Robinson & Smith, (the deponent's then firm) for the purpose of being discounted through the deponent's firm for Depeau's accommodation and use; that the deponent's firm had no dealings whatever with Depeau; and no consideration whatever was given by them for the note; that they were to get it discounted for him merely to accommodate him; being acquaintances and friends of his.

To the third interrogatory he answered, that his firm were indebted in about the sum of fifteen hundred dollars to the plaintiffs. " The deponent is not positive of the amount, but thinks it was $1500, or near that. The deponent's said firm gave them a bond of Edward H. Miller to secure the same. That he cannot recollect the time when the said bond was so given to them, but he thinks it was in the month of January or February, 1836; that a part of the said sum was repaid to the plaintiffs some time in the spring of 1836; he thinks in or about April, but cannot recollect the time more particularly. The amount so paid was about $700, as near as the deponent can remember. That the said bond was delivered to the deponent's firm on the payment of such part of the said $1500, upon the understanding that the deponent's firm would immediately pay them (the plaintiffs,) the balance of the said amount due them. The object of the deponent's firm in getting the said bond was to get the same discounted and pay the said plaintiffs at once; the bond being for a considerably larger amount than the sum due the plaintiffs. The deponent does not recollect whether the plaintiffs afterwards asked his firm for other security, although they may have done so ; he thinks the note in question, was a few days after the said bond was so delivered up by the plaintiffs, proffered to them as collateral security, for the balance due them; the deponent's firm did as first, stated, hand over the said note to the plaintiffs after they had secured the said bond; it was about a week after the said bond was so delivered up, that the said note was handed to the plaintiffs, as near as the deponent can recollect; it was at any rate, a few days after it was so delivered as above stated, to secure the plaintiffs the balance of the said sum so due them and for which the said bond had been held by them as collateral security, that no other or new consideration was given by the plaintiffs for the said note."

To the first cross-interrogatory, he answered, that his firm did indorse the note, and did so at the time, or soon after he received it.

(Depeau v. Waddington.)

To the second cross-interrogatory he answered, that the understanding between the plaintiffs and the deponent's firm, at the time the bond was so delivered up, was as stated in the answer to the direct interrogatories, that the deponent's firm should pay the plaintiffs immediately, the balance due them; it being stated and understood, that the deponent's firm was to get the bond discounted at once for that purpose; that nothing whatever was stipulated or spoken of at the time the bond was so given up, about other security in the place of the bond; for the reason, that the balance was to be paid in cash, as before stated.

To the third cross-interrogatory, he answered, that it was not understood, that the plaintiffs should not proceed for the recovery of the balance due them, until the maturity of the note; that nothing of the kind was spoken of or contemplated, as the balance was to be paid in cash immediately, as already repeatedly stated.

The defendant here closed his case.

The plaintiffs then gave in evidence the deposition of William P. Wright, taken under a commission to New York, who testified in answer to the second interrogatory, that he was in the employment of the plaintiffs for upwards of two years, as book-keeper, and left their employment on or about the 30th of April, 1836.

To the third interrogatory he answered, " the plaintiffs held a note of Robinson and Smith for $1500, due in January, 1836; they received a bond for about $2500, as security for the payment of the said note. The note was protested, and one of the firm came down to the office of the plaintiffs and stated, that if the plaintiffs would lend him the said bond for a day, he had an opportunity of getting the money upon it, and would then pay the said $1500 note. The said purpose was not fulfilled by taking up or paying the said note, and the said bond was never returned to the plaintiffs to my knowledge. They got some time afterwards, how soon I don't know, $800 in cash, and a note of the defendant, Depeau, in lieu of the said bond. As already stated, the said bond was given up to one of the said firm of Robinson and Smith, and was never returned; and the plaintiffs relinquished their claim upon the bond, upon receiving the said $800 and the defendant's note, as first stated." This took place before the deponent left the employment of the plaintiffs, but when, he did not recollect.

To the fourth interrogatory, he answered, that he knew nothing of the note inquired of in this interrogatory, (viz. the note in suit.) He only knew as stated in answer to the last preceding interrogatory, that a note of the defendant was taken as therein stated, and which with the $800 in cash was given in lieu of the bond.

(Depeau *v.* Waddington.)

To the first cross-interrogatory on the part of the defendant, the witness answered that "he was present when the bond was given up, and he merely recollects that it was given up for the purpose of getting it discounted to take up the said note for $1500. The sum of $800 was paid after the delivery of the bond, and not at the time it was given up; Robinson and Smith did not agree to pay any balance, when the bond was so delivered up; but as stated in answer to the direct interrogatories, it was given up to be discounted, and the note for $1500 was to be paid out of the proceeds forthwith. This was not done; but subsequently, the sum of $800 was paid; and either then or after the time the $800 was paid, Robinson and Smith gave the note of the defendant in lieu of the bond. The bond was never returned to the plaintiffs, as already stated." After the bond was so delivered up, the witness went down to Robinson and Smith's frequently, to get the amount of the $1500 note, but was never able to see either of them. The note in question, and the $800 were given after the bond had been delivered to Robinson and Smith, in lieu of the bond, and as collateral security for the note of $1500. "The deponent does not recollect how long after the bond was surrendered, that the note was received by the plaintiffs. The plaintiffs gave up their claim upon the said bond, for the note and the $800."

To the third cross-interrogatory, he answered that "the plaintiffs got Robinson and Smith's note in the course of business, but how he does not know, or for what it was given; he speaks of the $1500 note."

The evidence on both sides having been closed, the defendant's counsel made the following points on which they requested the charge of the Court:—

"1. If the jury believe that the note was improperly put in circulation by Robinson and Smith, it is incumbent on the plaintiffs to show that they paid value, parted with property, or gave credit on the faith of the note, at the time of the transfer to them.

2. That the taking of the note as collateral security, for the payment of a pre-existing debt, is not a taking of it in the ordinary course of trade, and for a valuable consideration between the parties to this suit.

3. That the taking of the note in payment of a precedent debt, is not such a consideration, as creates a superior equity in the plaintiffs to that previously existing between the original parties.

4. If the jury believe that the plaintiffs gave up the bond to Robinson and Smith, at their request, for the purpose of having it discounted or sold, and on their promise to pay the plaintiffs the amount of their debt due to them, out of the proceeds of sale, they parted with their claim, property and title to the bond, by parting with its possession for the purpose of a sale; and if the note was subsequently trans-

ferred to the plaintiffs by Robinson and Smith, after the sale of the bond, as security for the amount due to them, the plaintiffs paid no value for the note and cannot recover, if the jury are of opinion that the note was originally without consideration.

5. That as the note was made at New York, the law of that state must govern the contract."

The following points were made by the plaintiffs' counsel:—

" 1. The act of the plaintiffs in entrusting the bond to Robinson and Smith, (or the member of their firm to whom it was made payable,) that he might discount or dispose of it, for the use of the plaintiffs themselves, was not such a parting with the possession of the bond, as would change or divert the property which the plaintiffs had previously had in it, as a security for the money lent by them to Robinson and Smith.

2. Under such circumstances, Robinson and Smith would not receive it as debtors to whom a security is surrendered by their creditor, but as agents or trustees for the plaintiffs, in the same manner as strangers, who had received it under such circumstances, and for such a purpose.

3. If the bond was disposed of by Robinson and Smith, and the proceeds received by them, such proceeds would, in their hands, be subject to the same ownership and trust, as the bond for which they were the substitute. The right of the plaintiffs to the proceeds, would not be a mere pecuniary claim or debt of Robinson and Smith, but a specific interest and property of the plaintiffs in the proceeds themselves.

4. If Robinson and Smith had disposed of the bond, before the transfer to the plaintiffs of the note in question, there is no evidence that they had at that time parted with the proceeds of the bond; and in the absence of any such evidence, the legal presumption is that they still retained the possession of so much of the said proceeds as belonged specifically to the plaintiffs.

5. The plaintiffs' portion of the proceeds of the bond when disposed of, was in the hands of Robinson and Smith, a specific security belonging to the plaintiffs, to such extent as the bond had previously belonged to them.

6. The giving up of their claim to the bond, if it took place in the manner testified to by Mr. Wright, or in the words used by him, was in legal effect the same thing as giving up their specific interest in the proceeds of the bond.

7. If this receipt by the plaintiffs of the note in question, constituted the consideration or a part of the consideration for the surrender by them of their then existing interest in the bond, or in the proceeds of the bond, this amounted to an exchange of the one security for the other, and the note thus received in lieu of the security of the bond, then for the first time surrendered, was received for a valuable con-

(Depeau *v.* Waddington.)

sideration, given on the credit of the note itself, and the defence on this point fails.

8. Under the last point, the case would not be affected by the circumstance of the possession of the bond having been previously parted with by the plaintiffs, if they only parted with it for the purpose of its being discounted by the parties to whose possession it was entrusted, nor would the case be affected by the circumstance that the bond had actually been discounted or disposed of, and converted into money before that time.

9. Under the circumstances stated by Waring, at the conclusion of his answers to the second interrogatory in chief, it was the duty of the defendant, if he meant to contest his liability to the plaintiffs on this note, to give them notice of his intention so to do, and he incurred a similar obligation when the note was exhibited to him by the notary, with the plaintiffs' endorsement upon it. If the defendant did not give the plaintiffs such notice, within a reasonable period after the occurrence of the earliest in point of time of these circumstances, but suffered the plaintiffs to remain in the belief that he was liable on the note until this action was brought, it is against law and equity that he should now insist upon the present matter of defence.

10. The burden of proof of such notice is on the defendant; and in the absence of such proof the presumption is, that none was given."

The learned judge charged the jury in substance, as follows :—

" The plaintiffs claim the balance of $700 with interest, for which they say this note was pledged to them. The defendant has shown what would undoubtedly defeat any claim upon this note, on the part of Robinson and Smith, from whom the plaintiffs received it. This has put the plaintiffs on the proof of the manner in which they got the note; and on the proof under this head, the case will depend. Robinson and Smith owed the plaintiffs $1500 for money lent. They held a bond of one Miller, as a collateral security for this debt. This bond they say they gave to Robinson and Smith, for a particular purpose, viz. that of getting it discounted and their debt paid out of the proceeds, and that Robinson and Smith, having thus received the bond, did not either return them the bond, or pay them the proceeds of it. They say that they never gave up their claim to this bond, or the proceeds of it, until they received from Robinson and Smith $800 and the note of the defendant now in suit, and that on receiving the $800 and note, they did surrender it. The defendant on the other hand says, that when the plaintiffs first parted with the possession of the bond to Robinson and Smith, they gave up their right to it, that is to say, surrendered it, both as to property and possession; and he then puts the case on the ground that the subsequent receipt of the note was merely as a security for the previous debt or the balance of it. Now if the plaintiffs

(Depeau v. Waddington.)

did take this note merely as a collateral security for a pre-existing debt without more, the law would be in favour of the defendant on this point. If however a debt is given up or a security parted with; if any security is surrendered in consideration of receiving a note, the consideration is sufficient to give a property in the note to the party receiving it." This part of the case was left to the jury. The judge then said, "If you adopt the latter view of the case, I charge you, that parting with a security at the time of receiving the note is a sufficient consideration to remove the objection which the defendant has taken to the plaintiffs' recovery. A previous temporary parting with the mere possession of the bond for the particular purpose of having it discounted for the plaintiffs' use, would not constitute a parting with the plaintiffs' property in their portion of the proceeds of it, when disposed of, so as to render it impossible for them afterwards to surrender their property in it in consideration or part consideration of the receipt of this note. If the jury think the bond was only loaned to Robinson and Smith for a particular purpose, such lending did not divest the plaintiffs' property in the bond, or in the proceeds of it. If the bond was discounted, and the money raised upon it, the plaintiffs had a specific interest in the proceeds, as they before had in the bond. A mere parting with the possession of the bond does not necessarily imply that the plaintiffs intended to give up their claim to it. If however, when the bond was first handed over to Robinson and Smith the plaintiffs really surrendered all their right in it, then the defence is sustained. If on the contrary, the parting with the possession of the bond was merely for the particular purpose of having it discounted, and the proceeds paid over to themselves, the parting with the possession of it was no surrender of their property in it, or in the proceeds, after it should be disposed of."

The judge then said that he had answered all the points except the ninth; that he did not think this had an important bearing on the cause; but while he declined answering it as proposed, he would remark, that if the defendant slept upon the knowledge that the plaintiffs held the note in question, and did not immediately give them notice that he had received no value for the note, it would be a circumstance for the consideration of the jury in reference to the defendant's liability.

The judge also stated, that as he was about to deliver his charge to the jury, the defendant's counsel had handed him a paper containing five points to be charged on: That the general charge first given, had covered all the grounds taken in the argument, and from the opportunity afforded of examining the points, he was not aware that any thing in them had not been sufficiently noticed; he desired, however, if the counsel for the defendant wished any more specific answer, that a designation should be made of the portions of the

(Depeau v. Waddington.)

points which had not been embraced in the remarks already submitted to the jury.

The counsel for the defendant then referred the judge to the fourth and fifth points; whereupon the judge said that, as to the fifth point, no difference between the law of New York and the law of Pennsylvania had been shown, and therefore the point did not arise; but that the law of this case for the government of the jury was, as has already been stated by the court.

As to the fourth point, the judge said that it appeared to be complicated of law and fact; and believing it to have been answered by the general charge, so far as the defendant was entitled to have it answered, he had no further reply to give to it. The judge, however, then requested the counsel for the defendant to specify as to what particular case the fourth point had not been answered; and the counsel not presenting any such specification, no further answer was made by the judge.

The jury found for the plaintiff, and this writ of error was taken, and the following errors assigned.

" 1. Because the judge erred in charging the jury that a parting with the possession of the bond for the purpose of a sale of it, was no surrender of the property in it : and the parting with the possession did not imply that the plaintiffs intended to give up their claim to it.

2. Because the judge erred in charging, that if the defendant slept upon the knowledge that the plaintiffs held the note and did not immediately give them notice that no value had been received for it, it was a circumstance for the consideration of the jury in reference to his liability.

3. Because the judge did not answer the defendant's points at all; and he misdirected the jury as to the law arising from the evidence."

Mr. *Norris* for the plaintiff in error.

1. The learned judge below erred in saying that the plaintiffs did not surrender the property in the bond by parting with the possession of it under the circumstances. The plaintiffs could not have brought trover, or any other action, for the bond while it was in the hands of a third person who had given value for it. 1 *Bos. & Pul.* 546. In New York, a bond passes by delivery like a bill of exchange. Delivery is necessary to part with the property in a bill, bond, &c. *The King* v. *Lambton*, (5 *Price*, 442; 2 *Eng. Exch. Rep.* 276.) The property in an exchequer bill passes by delivery only. *Wookey* v. *Pole*, (4 *Barn. & Ald.* 1; 6 *Eng. Com. Law Rep.* 323.) The King of Prussia's bonds were held to pass by delivery

only, in *Gorgier* v. *Melville*, (3 *Barn & Cresw.* 45; 10 *Eng. Com. Law Rep.* 16.)  *Hornblower* v. *Proud*, (2 *Barn. & Ald.* 327.)

2. The defendant was not bound to prove notice. If the plaintiffs gave no consideration, they cannot be in a better situation than the party from whom they got the note.

3. This note was not received in the regular course of business, and therefore the defence was available. In *Coddington* v. *Bay*, (20 *Johns.* 651,) C. J., SPENCER, says, " I understand by the usual course of trade not that the holder shall receive the bills or notes as *securities* for antecedent debts, but that he shall take them in his business, and as payment for a debt contracted at the time." To bring the transaction within the rule laid down in other cases, the surrender of the bond and receipt of the note ought to have been simultaneous. There must be a present consideration. *Payne* v. *Cutler*, (13 *Wend.* 606.)  There must be an advance of money, or debt contracted, or liability incurred at the time. Here the delivery of the bond was a week prior to getting the note. *Smith* v. *Van Loan*, (16 *Wend.* 661,) repeats the doctrine that value must be paid, or property parted with, or credit given, on the faith of the note at the time of the security. Taking in payment of a precedent debt would not create a greater equity than that subsisting between the original parties. *Petrie* v. *Clark*, (11 *Serg. & Rawle*, 388.)  *Wardell* v. *Howell*, (9 *Wend.* 170.)  *Rosa* v. *Brotherton*, (10 *Wend.* 85.) Here the plaintiffs are not in a worse situation, if the defence prevails, than they were after parting with the bond.

4. The defendant was entitled to an explicit answer to all his propositions and points. *Smith* v. *Thompson*, (2 *Serg. & Rawle*, 51.)  *Bellas* v. *Hays*, (5 *Serg. & Rawle*, 445.)  *Simpson* v. *Wray*, (7 *Serg. & Rawle*, 340.)  *Baily* v. *Fairplay*, (6 *Binn.* 455.)  *Slaymaker* v. *St. John*, (5 *Watts*, 27.)

Mr. *Biddle* and Mr. *Cadwalader* for the defendants in error.

The doctrine contended for on the other side is, that, by giving up the bond, the plaintiffs gave up their right to the proceeds of it. But the jury have found that they did not. Robinson got the bond as their factor or servant. We don't deny that the plaintiffs could not claim the bond from a *bona fide* purchaser; but we contend that they had a specific lien on the proceeds. It is a case of exchange of securities. The plaintiffs gave up the bond, (or what is the same thing, their claim to the proceeds of it,) for the note. In *Taylor* v. *Plumer*, (3 *Maule & Selwyn*, 562,) it was held that a creditor was entitled to follow stock and bullion, which his broker had got with the creditor's money, instead of exchequer bills. *Coddington* v. *Bay*, (20 *Johns.* 639,) *Wolf* v. *Eichelberger*, (2 *Penn. Rep.* 348,) and *Petrie* v. *Clark*, (11 *Serg. & Rawle*, 388,) all show that parting with a security forms a valuable consideration. So is giving time. Our law is the same as that in England and New York. *Walker*

(Depeau *v.* Waddington.)

v. *Geisse,* (4 *Wharton,* 258.) *Smith* v. *Van Loan,* (16 *Wend.* 661,) in effect overrules *Rosa* v. *Brotherton,* (10 *Wend.* 85.) In *Morton* v. *Rogers,* (14 *Wend.* 575,) two judges expressly dissented from the doctrine in *Rosa* v. *Brotherton.*

Mr. *Haly* in reply.

The money obtained on the bond had no ear-mark. It was indistinguishable from other money of Robinson. The burden of proving that the bond was converted into specific property, lies on the other side. The case of *Taylor* v. *Plumer* makes the distinction expressly between money in specie and money merged in other money. Here no security was parted with on the faith of the note. What is called on the other side " the proceeds of the bond," was a mere right of action against Robinson for a breach of trust; if there was any trust in the case. The plaintiffs neither released the debt nor gave time.

The opinion of the court was delivered by

ROGERS, J.—This was an action of assumpsit on a promissory note, drawn by the defendant, Depeau, in favour of Robinson & Smith, or order, and by them endorsed to the plaintiff. The plaintiffs lent Robinson & Smith fifteen hundred dollars on a note; and as a collateral security, the latter firm placed in the hands of the former a bond for twenty-three or twenty-four hundred dollars, of a certain Edward Miller to Thomas S. Smith, one of the partners of Robinson & Smith. Sometime after, Robinson called on the plaintiffs, and stated that he wanted to take the bond away, and to get it discounted. Robinson & Smith, a week or so after the delivery of the bond, paid to Ogden & Co. eight hundred dollars, and transferred the note in suit to them as collateral security, for the amount yet remaining due. The plaintiffs gave up their claim upon the bond for the note, and the eight hundred dollars. It seems that the note of Robinson & Smith to the plaintiffs was protested; that one of that firm came to the plaintiffs, and stated that if they would lend him the bond for a day, he had an opportunity of getting the money upon it, and would then pay the fifteen hundred dollars. The bond was delivered to him for that purpose; but the bond was neither redelivered to the plaintiffs, nor was the amount due on the note paid according to the understanding between them; but sometime afterwards—how soon is not recollected, nor is it material—eight hundred dollars in cash were paid, and the note in suit was transferred to the plaintiffs, in lieu of the bond, and as a collateral security for the note. It may be inferred from the evidence, although no direct proof is given of it, that the bond was assigned for a valuable consideration, or paid by the obligor: that the money was received by Smith, one of the obligees; and that eight hundred dollars were paid of the proceeds.

(Depeau v. Waddington.)

Robinson, of the house of Robinson & Smith, says, that the bond was delivered to the deponent's firm on payment of part of the fifteen hundred dollars, upon the understanding, that the deponents would immediately pay them the balance of the amount due; that the object of the firm in getting the bond was to have it discounted, and pay the plaintiffs at once; the bond being for a considerably larger sum than was due. He does not recollect whether the plaintiffs afterwards asked his firm for other security, although they may have done so. He thinks the note in suit was, a few days after the bond was delivered up by the plaintiffs, proffered to them, as collateral security for the balance due. They handed over the note about a week after the bond was delivered up, but after they had secured the bond; that is, as I understand it, after they had received the money for it. No other, or new consideration was given by the plaintiffs for the note. The understanding was, that the deponent's firm was to pay the plaintiffs immediately the balance due them; that the bond was to be discounted at once for that purpose. Nothing was stipulated about the security, because the balance was to be immediately paid in cash. The note in suit was given for the purpose of being discounted for the sole accommodation of Dupeau.

The defendant alleges that there was no consideration for the note in suit; that the transfer of it to the plaintiffs was in fraud of his rights; that it was placed in the hands of the plaintiffs as collateral security, and that consequently there is the same equity existing as between the maker and payee. The plaintiffs admit that there was no consideration between the original parties; that the payee could not recover, and that if pledged as a collateral security, without more, for a pre-existing debt, they would be in no better situation than the first holder; but they contend that there was an exchange of securities in substitution of the note for the bond, or the proceeds of the bond, and that they were innocent holders for value.

Several exceptions have been taken to the charge of the court, none of which have been sustained. The charge is clear and precise, and substantially answers all the points which were made, and is as favourable to the defendant as he had any right to expect. The court leave the facts to the jury, and if there be any error, it is the application of the evidence to the points ruled. In the investigation of the case it becomes material to ascertain what are the facts found by the jury, and to which their attention was directed by the court. They are in substance, these. That placing the bond in the hands of Robinson & Smith, who acted as the agent of the plaintiffs, was for a particular and special purpose, viz., that they would immediately dispose of the bond; which they did; and that they would pay over a portion of the money to them; and that in the meanwhile, the proceeds would be held by them as a pledge or security for the amount due on the note; that the money raised by the sale

(Depeau *v.* Waddington.)

or payment of the bond was a substitute for the bond; that as the bond was a collateral security, so was the money arising therefrom. That at the time they stood in the relation of principal and agent, the parties came to an arrangement, and in consideration that the plaintiffs would relinquish all claim to the money, whether lien or otherwise, they agreed to transfer, in lieu of the bond or the proceeds thereof, (which the jury have found to be the same thing,) the note now in suit, as a collateral security for the original debt. The only question, therefore, is, are the plaintiffs innocent holders for value. As between the maker and payee, it is granted, there was no consideration, and the failure and absence of this would be a good defence to the maker. But between *other parties*, as here between the plaintiffs and defendant, two distinct considerations come in question; first, that which the defendant received for his liability; and secondly, that which the plaintiffs gave for their title. If the defendant can show that he has an equity not to be charged, as if he can prove, as has been done here, that he received no consideration for his liability, or that his signature was obtained by force or fraud, he may, after giving due notice, require the plaintiff to show that he gave a valuable consideration for the note or bill, and that the plaintiff has no equity to recover. But actions between remote parties will not fail unless in case of absence or failure of both these considerations. It is conceded here, that as between the maker and payee, there is no consideration whatever; that the plaintiffs are required to prove that they gave a valuable consideration for the note, and that if the note is held merely as a collateral security for a pre-existing debt, without more, it is not such a consideration as will prevent the defendant from availing himself of the equity as between the maker and payee. In *Rosa* v. *Brotherton*, (10 *Wend.* 85,) it is decided, that when the creditor receives the transfer of a negotiable note, in *payment* of a pre-existing debt, he takes it, although transferred to him before maturity, subject to all existing equities between the original parties. But that case was not well considered, and has been subsequently overruled. But although this is so, it has been repeatedly held that a collateral security for a pre-existing debt, without more, is not such a consideration as will give title to the holder; yet, if there is a new and distinct consideration, the holder is a purchaser for value, and, as such, protected from a defence which would have been available between the original parties. It seems to me there would be no great difficulty in proving that it would have been better not to have restrained the negotiability of paper *bona fide* pledged as a collateral security for a debt; but on this point, the law is settled. Without making a parade of learning and research by the citation of numerous authorities, foreign and domestic, ancient and modern, it is sufficient to refer to *Petrie* v. *Clark*, (11 *Serg. & Rawle*, 377,) where both points are ruled. It is there held that the transfer of negotiable paper as collateral security for

(Depeau *v.* Waddington.)

a pre-existing debt, does not constitute a person a holder for a valuable consideration. But where there is a new consideration, as where it can be shown that time was given in consideration of obtaining the note as a security for the debt, it would be otherwise. The court, after stating the general principle adverted to, add, that it might be shown on the other side that the plaintiffs had a right to recover,.provided they were able to prove that time was given in consideration of obtaining the note as security for the debt, and that in consequence the debt was lost. The giving of time would be a present and a valuable consideration; and a pledge in these terms would be the same as a pledge for money paid down. Here the principle is plainly announced; for the case put is but an illustration of the principle, and applies with great force to the case in hand. Where the holder of a note or bill has not paid value for it, he is in privity with the first holder, and will be affected by any thing that would affect the first holder. *Collins* v. *Martin,* (1 *Bos. & Pul.* 651.) But no evidence of want of consideration, or other ground, to impeach the apparent value received, was ever admitted in a case between an acceptor, a drawer, or maker, and the person holding the bill or note for value. There is no evidence that the plaintiffs were aware of the nature of the transaction between the maker and payee. There was a pre-existing debt between the plaintiffs and the payee, for which they had a collateral security amply sufficient for their entire indemnity. One of the firm obtains possession of the bond for the particular purpose of reducing it into cash, and with the proceeds paying the amount due on the note. The money was raised by them, and instead of paying it over, as was the understanding, and their duty, in lieu thereof they assign to them the note now in suit. Now in what situation did Robinson and Smith, at the time of the transfer, stand to the plaintiffs? Clearly in the light of agents, with the money of the principals in their hands, recoverable by action of assumpsit for money had and received, and which might have been followed by them into any specific property into which they may have converted it. As for instance, if they had purchased stock, it would have been subject to their claim. 3 *Maule & Selw.* 562. The proceeds of the bond, to the amount of the lien, were theirs, and there is no evidence — but the reverse may be inferred—that the parties intended to convert the transaction into a mere personal contract between them. And if this had been the effect, it is far from clear, that if the right to a special action in the case had been relinquished, it would not have been a valuable consideration. The consideration is every thing— the amount of it nothing, unless it is a colourable consideration. But be this as it may, the plaintiffs are holders for value. For what is this but an exchange of securities? and this, if it needed authority, has been ruled to be a sufficient consideration, in *Hornblower* v. *Proud,* (1 *Barn & Ald.* 333.) But it is said, it is the exchange of

one collateral security for another collateral security—and this is true; but may not the former have been of more value than the latter, as it undoubtedly was here, although that is an immaterial circumstance, so far as the legal point is involved. It is very plain, that had the plaintiffs retained their original security, they would have had no difficulty whatever. It has been produced solely by the exchange of securities. The same general rules which apply to the nature of the consideration for other simple contracts are applicable here. If a man give his acceptance to another, that will be a good consideration for a promise on another bill, though such acceptance is unpaid. And cross acceptances for mutual accommodation are respectively considerations for each other. *Rose v. Sims,* (1 *Bar. & Ad.* 521.) *Cowles v. Dunlap,* (7 *T. R.* 565.) *Buckler v. Buttevant,* (3 *East,* 72.) In *Bosanquet v. Dudman,* (1 *Stark.* 1,) it was held, that when a banker's acceptances for his customer exceeded the cash balance in his hands, and accommodation acceptances were deposited by the customer with the banker, as collateral security, whenever the acceptances exceeded the cash balance, the banker held the collateral bills for value. The reason that a negotiable note transferred as a collateral, does not constitute the holder a purchaser for value, is, that he is supposed, although very often contrary to the fact, to be in no worse situation than he was before. But that is not the case where there is a new and distinct consideration superinduced by the transfer and exchange of securities. It is not a past, but a present consideration.

The plaintiffs in error contend, that the judge erred, 1st, in charging the jury, that a parting with the possession of the bond, for the purpose of a sale of it, was no surrender of the property in it; and that the parting with the possession did not imply that the plaintiffs gave up their claim to it. Coupled with the evidence, we see no error in the charge; as it was the understanding of the parties, and the jury have so found, that it should be used for the special purpose of converting the bond into money, and paying the plaintiff's debt. Quoad this amount they were the agents of the plaintiffs.

2d. In charging that if the defendant slept upon the knowledge that the plaintiffs held the note, and did not immediately give them notice that no value had been received for it, it was a circumstance for the consideration of the jury, in reference to his liability. The answer refers to the plaintiff's ninth point; and it may be doubtful whether, if there be error at all, it is not against the plaintiffs. It is conceded, that the plaintiffs were not aware of the want of consideration between the original parties; at least there is no proof of it: that they were resting under the conviction that there was no want of faith between them: that there was at least a moral obligation on the defendant, as soon as he was informed of the true state of the case, to take the earliest opportunity to apprise them of it, that they might secure themselves: but instead of this, he seems

.to rely on the promise of Robinson & Smith to indemnify him by payment of the plaintiff's debt. There is nothing to complain of in this part of the charge, as it certainly was a circumstance which the jury might take into consideration.

But it is said that there is error, because the judge did not answer the defendant's points at all: and that he misdirected the jury as to the law arising from the evidence. That the latter allegation is groundless, I have endeavoured to show; and as to the former, all the points to which the defendant was entitled to an affirmative answer, are noticed in the charge. But in addition, this case is in some respects peculiar; and we sincerely hope it will be the last of its kind. When the judge was about to deliver his charge to the jury, the defendant's counsel handed to him a paper, containing five points to be charged on. The judge supposed that the general charge had covered all the ground taken in the argument; and from the opportunity afforded of examining the points, he was not aware that any thing in them had not been sufficiently noticed. He desired, however, if the counsel for the defendant wished any more specific answer, that a designation would be made of the portions of the points which had not been embraced in the remarks already submitted to the jury.

The counsel for the defendants then referred to the fourth and fifth points. To this he answered, that no difference had been shown between the law of New York and the law of Pennsylvania; and therefore the point did not arise. In this the court was right; for no difference now exists in the law of the two states in this particular. The courts of New York have retraced their steps; and the law is the same there as here.

As to the fourth point, the judge said, that it appeared to be complicated of law and fact; and believing it to be answered by the general charge, so far as the defendant was entitled to have it answered, he had no further reply to give to it. The remarks already made show that the point was substantially answered; but there is another reason equally conclusive.

After stating his impression, that the point (certainly not so clearly expressed as to be understood in a minute) had been answered, the judge requested the counsel for the defendant to specify as to what particular the fourth point had not been answered; and the counsel not presenting any such specification, no further response was made by the court. To convict a judge of error, after evincing his desire in this manner to do justice to the parties, might lead to the practice of trick and artifice and concealment, and must be specially avoided; or otherwise the trial by jury would be a common nuisance. It is not intended to intimate that there was not due fidelity to the court in this case; but we must presume that the counsel knew in what particular the judge failed or omitted to answer; and in common candor it was their duty, being appealed to, to point it out. If they choose not to do so, for motives best known to themselves, it is an

(Depeau *v.* Waddington.)

error arising, in part at least, from their own omission; and cannot be a ground for reversal. If any injury arises from it, it is a matter to be settled between the counsel and the client.

As to the question of the onus, which has been so much discussed in the argument, it was a proper subject of remark before the jury; and is only material here, as bearing upon the facts found by the jury.

Judgment affirmed.