ROBERT O. LOVE et al. *v.* WILLIAM TAYLOR et al.

If a party take a security or specific property, in satisfaction and discharge of a preëxisting debt, which is thereby extinguished, he is a *bonâ fide* purchaser, and not affected by previous equities.

A certificate of a married woman relinquishing her dower in land, which states that the "said E., being examined separate and apart from her husband, acknowledged that she signed, sealed, and delivered the same voluntarily, without any threats, fear, or compulsion of her said husband," is held to be a sufficient compliance with the statute.

A literal conformity to the words of the statute, in the relinquishment of dower by a *feme covert*, is not required; but it is sufficient if its requisites are substantially complied with.   *Held*, that it was only intended by the provisions of that statute to prevent the undue influence arising from the presence of the husband, and it is not absolutely necessary to a valid relinquishment of dower by a *feme covert*, that the words on "private examination" should be

inserted in the certificate of acknowledgment, but only that it should appear that the acknowledgment was made out of the presence of the husband.

On appeal from the southern district chancery court at Natchez; Hon. James M. Smiley, vice-chancellor.

The appellants filed their bill against Taylor and wife, and Wade and Watt, for the purpose of procuring from Wade and Watt the legal title to the land in controversy, upon the following equity disclosed in their bill.

That in 1828, Robert E. Love, the father of the appellants, deposited in the hands of Elizabeth McCulloch (now Taylor), a certain sum of money, with instructions to vest said money in the purchase of a tract of land in Wilkinson county, which is now in controversy, containing 580 acres. That at the time of depositing with the said Elizabeth the money, the title to the land was vested in one John Henderson. The bill says, "that the money so furnished by their father in his lifetime, was handed to the said Elizabeth, with instructions special, to vest the same in the above-described land, taking a title to the same in the name of (R. O. and M. Love) complainants," and managing the same for sole use of the Loves until their majority.

That in May, 1828, said Elizabeth made the purchase in her own name, and took the deed to herself. That she afterwards married one William Taylor. That Taylor and wife, the said Elizabeth, in 1841, for the consideration of $10,000, sold and conveyed the land to Wade and Watt, who had notice of complainants' equity, &c., and that said Elizabeth was forced by her husband to join in said deed.

To the bill Wade and Watt demurred for want of equity, which was overruled, and they then answered the bill, in which they deny all knowledge of the claim set up in complainants' bill. But that they are innocent purchasers at a full price, and without notice, and require proof of all the material allegations of the bill in reference to this pretended claim.

*Thomas Reed*, for appellants.

1st. That bill and proofs show a resulting trust in favor of

Love et al. *v.* Taylor et al.

appellants. 1 Barb. Ch. R. 449; *Boyd* v. *McLain,* 1 Johns. Ch. 582; *Botsford* v. *Burr,* 2 Ib. 408; *Willis* v. *Willis,* 2 Atk. 71; 1 Maryland Ch. Decr. 481; 13 S. & M. 53.

2d. That a resulting trust will enure to a party, where only fact of the purchase-money of the trust property was paid for his benefit. *Botsford* v. *Burr,* 2 Johns. 408.

3d. That the deed conveyed no legal title, because the deed to Wade and Watt was not acknowledged before the proper officer. Hutch. Code, 605, 617.

4th. That the deed to Wade and Watt conveyed no title, because it does not appear that the acknowledgment of its execution by Mrs. Taylor, a *feme covert,* was made on private examination. *Warren* v. *Brown,* 3 Cushm. 66; Hutch. Code, 607, 608; North on Probates, 492; *Robinson* v. *Banfield,* 2 Murph. 390; *Skinner* v. *Fletcher,* 1 Ired. 313; *Askew* v. *Daniel,* 5 Ib. 321; *Gregory* v. *Ford,* 5 B. Mon. 481; *Gill et al.* v. *Fountleroy,* 8 Ib. 177; *Ayres* v. *McConnell,* 2 Scam. 307; 11 Ill. 128; *Perry* v. *Calhoun,* 8 Humph. 551; *Hayden* v. *Westcott,* 8 Conn. 129; *Churchill* v. *Munroe,* 1 R. I. 209; *Garrison* v. *Fisher,* ante, p. 352.

The true rule of construction is laid down by the following authorities. *Watson* v. *Mercer,* 6 S. & R. 49; *Evans* v. *Commonwealth,* 4 Ib. 272; *Jacob* v. *Kraner,* 1 Har. & Johns. 371; *Hawkins* v. *Burress,* Ib. 513; *Elliott* v. *Peirsol,* 1 Peters, 328; *Langhorne* v. *Robson,* 1 Leigh, 224; *Rainey* v. *Gordon,* 6 Humph. 345; *Blackburn* v. *Pennington,* 8 B. Mon. 217.

5th. That the deed from Mrs. Taylor was obtained by duress, and therefore conveyed no title. 2 Greenl. 301, and n.

6th. That if even the deed from her, (Mrs. Taylor,) was in equity good as to her, it does not bar the complainants from recovery. 6 Wend. 11.

7th. The facts show that defendants Wade and Watt were not *bonâ fide* purchasers without notice for a valuable consideration as against the complainants.

It devolves on the parties setting up such a defence to fully prove the payments. *Royal* v. *Miller,* 2 Dana, 57; 2 Pick. 247.

A preëxisting debt is not a valuable consideration. *Rowan*

48*

Love et al. *v.* Taylor et al.

*&* *Harris* v. *Adams*, 1 S. & M. Ch. 45 ; *Brooks* v. *Watson*, 7 Hill, R. 513 ; Freeman's Ch. R. 343, and authorities.

*G. W. L. Smith*, on the same side.

*H. F. Simrall* for appellees.

A resulting trust is where A. furnishes money to B., to purchase land, and B. takes the title to himself, and in his own name. Chancery will hold, that B.'s legal title is for the benefit of A ; and from this transaction, the trust " results." And the very basis of this equity is, that the party setting up the trust paid the purchase-money, and to him and him alone will the trust result. And such payment, too, must be clearly proved. *Bryan* v. *McLain*, 1 Johns. Ch. 388.

The party who sets up the trust, if he made no assignment of the purchase-money, cannot be permitted to show by parol proof, that the purchase was made for his benefit, or on his account, expressly adjudged in *Botsford* v. *Burr*, 2 Johns. Ch. R. 582, and cases there cited ; and also *Bartlett* v. *Pickersgill*, 4 East, R. 577, note. I could refer to many other cases, but these are directly to the point, and correctly state the principle.

My second point is, that the complainants below did not establish by good and sufficient proof the claim or title to the relief sought. All the authorities are, that the proof of a resulting trust must be clear and positive, not consisting of loose and idle conversations, and the facts relied upon must be free from all suspicion. 2 Fonbl. Eq. (3 Am. Ed.) b. 2, 41, and notes ; 2 Johns. Ch. R. 405 ; 1 J. J. Marsh. R. 3 ; 1 S. & M. Ch. R. 398, and cases there cited ; Roberts on Frauds, 99, 104, and notes. The answer of Mrs. Taylor is no evidence against Wade and Watt ; and I insist that she is an incompetent witness, and that her deposition should not be regarded as testimony against the appellees. She joined with her husband in the deed to Wade and Watt, with covenants of warranty. Can she be permitted to prove, as against her vendees, title out of herself and husband ?

A party to a deed cannot be allowed by his own testimony

to impeach the title purported to be conveyed by the deed; certainly this is the effect of the testimony of Mrs. Taylor. She proves, or attempts to prove, a trust in favor of the appellants, which controls the legal title, and which will, at any time, and against any party, draw to the *cestui que trust* the legal title. 4 Coke, R. 3; 1 Johns. R. 139; 1 Harr. & Johns. 252; 4 N. H. R. 229; 8 Conn. 304; Gilbert, Evid. 160; *Shelly's case*, 1 Term R. 300.

The averment in the bill is, that Miss McCulloch "should take the title from Henderson and wife in the name of R. O. and M. C. Love." The proof is by Mrs. Taylor, (the same personage,) that she took the title in her own name, at the "request and by the direction of Robert E. Love," the father. The witness paid $400 down, and the balance of $300 was credited to her, on her giving note. This was upon her sole personal credit.

"If the purchase is made on the credit of the party in whose name the deed is taken, no trust results." 3 A. K. Marsh. R. 57; 2 Amer. Eq. Dig. 477, § 42; 2 Johns. Ch. R. 413, 414.

Inasmuch as a resulting trust can be proved by parol, it may be disproved in the same way.

If the deed to Wade and Watt is not perfect, because of defective acknowledgment, still Wade and Watt are purchasers, holding an equitable title, which chancery will protect. The proof is clear, that Taylor and wife intended to make a sufficient assurance of the legal title; and if the deed fails to convey, equity would compel a further assurance. *Edmonson* v. *Orr*, 12 S. & M. 541.

But the objection taken to the acknowledgment is not tenable. The objection is, that a justice of the peace in Adams county-has no authority under the statute to take acknowledgments to deeds conveying land situate in Wilkinson county.

By the act of 1822, Hutch. Code, 604, § 1, justices of the peace and notaries-public may take acknowledgments in that county where the lands, &c.

The act of December, 1833, Hutch. Code, 617, art. 5, declared that the acknowledgment or proof of deeds of conveyance might be made before any judge of the high court of

errors and appeals, or of the circuit court, judge of probate, notary-public, &c., &c., whether the land be situated in the same county or not.

The act of 1836, Laws of 1836, 99, enacted, " that from and after the passage of this act, all the powers heretofore belonging to notaries-public shall *ex officio* be and vest in justices of the peace of the respective counties of this State."

The act of 1833 vested in notaries-public authority to take acknowledgments of deeds, no matter where the land might be, or in what county. By statute of 1836, all the powers theretofore belonging to notaries-public vested, and should be *ex officio* in justices of peace.

Mr. Justice HANDY delivered the opinion of the court.

The first question presented in this case is, whether the appellants are entitled to have the lands in controversy subjected to a resulting trust in their favor, against the appellees Wade and Watt.

It appears by the pleadings and proofs, that in the year 1828, the father of the appellants placed in the hands of their aunt, Elizabeth McCulloch, who afterwards married one Taylor, a sum of money for the purpose of purchasing the tract of land in controversy, for the use and benefit of the appellants; that she made the purchase, but took the deed in her own name; that she repeatedly declared that she held the property for the use and benefit of the appellants; but that in the year 1841, after she had intermarried with Taylor, by the joint deed of her husband and herself, the lands were sold and conveyed to the appellees Wade and Watt for the sum of $10,000, who are charged to have had notice of the condition of the title and of the appellants' equity; that this deed was executed by the wife of Taylor against her strenuous objection, and by coercion of her husband, of which Wade and Watt are also alleged to have had notice.

These charges of notice of the appellants' equitable claim to the property, and of the deed being executed by the wife through the compulsion of her husband, are fully denied by Wade and Watt, and are not sustained by evidence. The testimony of

Love et al. *v.* Taylor et al.

Mrs. Taylor, taken in behalf of the appellants, goes far to establish that notice of the trust was given to Claiborne, who was concerned in the purchase.   But conceding that Claiborne was the agent of Wade and Watt in purchasing the lands from Taylor and wife, his deposition positively and circumstantially contradicts the testimony of Mrs. Taylor, and shows that, when called on by him in relation to selling the land, she expressed her willingness that the sale should be made, and stated that the title was good.   Her testimony, then, cannot prevail against the answer of Wade and Watt, and they must be regarded as purchasers without notice of the equity of the appellants arising from the trust, and as such are entitled to protection.   Freeman's Ch. R. 460.   There is no evidence whatever showing that they had any connection with the alleged coercion on the part of Taylor in obtaining his wife's execution of the deed, or that they had any notice that it was practised.   Having purchased the property for its full value, from the parties who held the legal title, and without notice of the secret equity of the appellants, or of any impropriety in obtaining the wife's execution of the deed, they thereby obtained the legal title *bonâ fide*, against which the equity of the appellants cannot prevail.

The next objection urged to the deed to Wade and Watt is, that it was acknowledged before an officer who purports to have acted as a justice of the peace of Adams county, the lands lying in Wilkinson county; and that the act of the justice of the peace under such circumstances was unauthorized by the statute (Hutch. Code, 605), and void.   This question has been recently considered and decided by this court, and it is held that, under our statutes, notaries-public were empowered to take acknowledgments of deeds for lands lying out of the county of their residence, and that justices of the peace *ex officio* possess all the powers belonging to notaries-public, and that an acknowledgment like the present must be considered as having the same effect as if done in form by a notary-public.   *Dennistoun* v. *Potts*, ante, p. 13.   And we are satisfied that this rule is correct.

Another objection raised to the title of Wade and Watt is, that, having obtained their title to the lands in payment of a

preëxisting debt, they are not entitled to protection as *bonâ fide* purchasers without notice.

It appears by the evidence, that, so far as Taylor and wife were concerned, they received a present consideration by land and other property, given in payment of the purchase-money; that Wade and Watt had a mortgage on a tract of land, which was conveyed to Taylor in part payment of the purchase-money, which mortgage appears to have been discharged in the transaction. It is now well settled, that if a party take a security or specific property in satisfaction and discharge of a preëxisting debt, which is . thereby extinguished, he is a *bonâ fide* purchaser, and not affected by previous equities. *Swift* v. *Tyson*, 16 Peters, 1–24; 11 Serg. & R. 377; 6 Wharton, 220; *Brush* v. *Scribner*, 11 Conn. 388; 3 B. Monr. 629; 11 Ohio, 172. This is the rule in regard to negotiable securities, and no reason is perceived why it is not applicable to the purchase of lands. *Padgett* v. *Lawrence*, 10 Paige, 180; *Dickenson* v. *Tillinghast*, 4 Ib. 221; *Clark* v. *Flint*, 22 Pick. 243; *Morse* v. *Godfrey*, 3 Story, R. 390; *Upshaw* v. *Hargrove*, 6 S. & M. 292.

The remaining objection urged against the deed to Wade and Watt is, that the certificate of acknowledgment does not show that the wife was "privately examined" when the acknowledgment was made by her. The certificate states that the "said Elizabeth, being examined separate and apart from her husband, acknowledged that she signed, sealed, and delivered the same voluntarily, without any threats, fear, or compulsion of her said husband."

This objection presents a question of the greatest practical importance, not only in reference to the present case, but to the community, as affecting a large number of estates held by meritorious purchasers. It has, therefore, received from the court the most careful consideration. The former decision made in this case, and that in the case of *Warren* v. *Brown*, 25 Miss. R. (which should not have been reported after the reargument was ordered in this case*), have been very materially reëxam-

---

* NOTE BY REPORTER. That case was handed to the Reporter to be reported, with nothing to show on the opinion that it was "not to be reported," or any other instructions in relation to it.

ined, with reference to the true principles governing the subject, and many adjudications touching it in other States of the Union upon similar statutes.

It appears to be almost universally held, that a literal conformity to the words of the statute, in such cases, is not required, and that if its requisites are substantially complied with, it is sufficient. What, then, is substantial compliance with the statute? In order to settle this, we must consider what particular evil was intended to be prevented, and what object was intended to be promoted. There is no difficulty in declaring that the object intended to be promoted was the free, voluntary, and unconstrained act of the wife; and that the evil intended to be obviated was the undue influence of the husband. It was presumed that his presence imposed constraint upon her, and that influence was intended to be removed by placing her out of its immediate operation, and where she would be presumed to act "freely, voluntarily, and without any fear, threats, or compulsion of her husband." The undue influence of others does not appear to have been contemplated, nor does it seem to have been in the mind of the legislature, that the influence of the husband might be exerted through other persons present at the examination; for had this been the case, the provision would, doubtless, have been "apart from her husband" and all other persons. Great force is given to this view when we refer to what she is required by the statute to acknowledge, and which has reference entirely to her husband, namely, that she acted "without fear, threats, or compulsion of her husband."

But it is urged, that the terms of the statute require that it should be shown that the examination was both private and apart from her husband; that these terms are employed *ex industriâ;* that they are significant and must be complied with, and that the statute must be construed so as to give effect to all the words used. But words are to be construed with reference to the whole statute, its general scope and object, and the particular evil intended to be provided against; and the terms used must yield to the obvious intention to be collected from the whole act. We have above adverted to the evil in-

tended to be prevented, and the reason of this statute. Keeping these objects in view, what, then, are we to understand by the words " private examination?" If it was intended that it should be out of the presence of all persons whatever, the words " apart from her husband" become useless, for that was already embraced by the words " private examination," under the construction contended for. Suppose the words " apart from her husband" were omitted, can we attach any definite and practical understanding to the words " private examination?" Do they necessarily exclude the husband's presence? and if they do not (as is most certainly true), do they necessarily exclude the presence of all other persons? If not, what number and character of persons may be present, and still the examination be " private?" These considerations present great difficulties in deducing any practical rule from the statute upon the construction contended for. And these difficulties can only be avoided by applying the reason of the statute in its exposition. Otherwise, it is vague and impracticable. That reason manifestly has reference only to the presence and the presumed influence of the husband. When, therefore, the statute provides that the wife shall make the acknowledgment on " a private examination," " apart from her husband," the latter clause was intended merely to explain and define what was meant by the words " private examination," which were too general and uncertain for any practical purpose. The substantial thing required to be done by her was to declare that she acted " freely, without any fear, threats, or compulsion of her husband," and this out of his presence, and apart from all liability to his constraint.

This view of the subject is supported by several American decisions, in which the point has been directly presented. *Den* v. *Geiger*, 4 Halst. 233; *Nanty* v. *Bailey*, 3 Dana, 111; 8 B. Monr. 177. And the principle upon which we have placed our construction of the statute is recognized by numerous cases. *Shaller* v. *Brand*, 6 Binn. 438; 5 B. Monr. 481; 1 Peters, Cir. C. R. 188; 4 Halst. 233; 11 Illinois, 128; 1 R. I. 209; *Garrison* v. *Fisher*, decided by this court at the present term. Upon the same principle of preventing the presumed undue influence

arising from the husband's presence, the statutes of many of the States omit the words "private," or "privy examination," and only require that it shall appear that the acknowledgment was made out of the presence of her husband; and in other States, where the words are mentioned in the statutes, it is held to be sufficient to show that the examination was made apart from the husband.

Under this view we are of opinion, that, when the other essential requirements are complied with, it is not necessary that the certificate of acknowledgment should state that the wife was privately examined, and that the certificate in this case is sufficient.

The decree of the district chancery court is, therefore, affirmed.

Smith, C. J., having been of counsel, gave no opinion.