<hr/>

EMANUEL & BARNETT *v.* MILES WHITE.

1. CONFLICT OF LAWS: BILLS AND NOTES GOVERNED BY THE LAW OF THE PLACE WHERE PAYABLE: INNOCENT HOLDER PROTECTED.—A promissory note, executed in this State, but payable in the State of Louisiana, is governed by the rules of the commercial law, which prevail in that State; and a *bonâ fide* holder, for value, of such a nóte, will not be affected by equities existing between the antecedent parties.

2. BILLS AND NOTES: HOLDER NOT' REQUIRED TO PROVE TITLE UNTIL SUSPICION HAS BEEN CAST ON IT.—The possession of negotiable paper, duly indorsed, *prima facie*, implies title, and the holder is presumed to be *bonâ fide*, and to have given value for it, until something be shown in disparagement of his title; and he is not bound to show that he gave a valuable consideration for it, or that he took it before maturity, until the adverse party has shown the want, or failure, or illegality of the consideration, or that it was lost, or stolen from the rightful owner, or that the holder procured it by fraud. Payment by the maker, to the original payee, without notice of its transfer, is not sufficient to cast upon the indorser, who acquired it before it fell due, the burden of proving that he gave value for it. See Story on Prom. Notes, § 196.

3. SAME: ANTECEDENT DEBT: A CONSIDERATION TO MAKE TRANSFEREE A HOLDER FOR VALUE.—The payment of an antecedent debt, and the release of parties, collaterally liable thereon, is a sufficient consideration to support the transfer of negotiable paper, so as to make the transferee a holder for value. See *Taylor* v. *Love*, 26 Miss. R. 567.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

In the year 1845, Emanuel & Barnett, the appellants, filed their bill in the Superior Court of Chancery, against the appellee, Miles White, in which they alleged, in substance, that, on the 10th day of October, A.D. 1839, they executed three promissory notes, payable to P. S. Chappell & Co., of Baltimore, to order, for about the sum of $1500 each, and due respectively in three, four, and five months after date; that on the 15th day of February, A.D. 1841, they paid the said notes to the agent of Chappell & Co., in Vicksburg, in this State; that at the time of said payment, said agent delivered up one of said notes, and agreed to deliver up the others, as soon as complainants should make a deed to certain lands, which, by the terms of the settlement, they were bound to do, in part payment of said indebtedness; that they soon afterwards executed and delivered the deed, as they agreed, but that Chappell & Co. had failed to deliver the remaining two notes to them. The complainants further stated, that, at the time of said payment, and the execution and delivery of the deed, they had no notice or suspicion that any other person had or claimed any title or interest in them, but believed that they belonged to said P. S. Chappell & Co.

The bill further alleged that, after said payment, they learned that the defendant, Miles White, claimed, and that he now claims, to be the owner of said notes; that said White is a citizen of Baltimore, but is now within this State, and has said notes in his possession; that said notes have been in possession of the agent of White, in Vicksburg, for several years, but that said White refuses to institute suit on the same, intending, as complainants believe, to sue one of them (Emanuel) in some other State; the business of said Emanuel frequently requiring him to visit the northern and eastern cities. The bill prayed for an injunction against White, and for a decree requiring him to deliver the notes up to complainants, and that they be cancelled.

White answered, admitting the settlement and payment of the notes, as alleged in the bill, but insisting that he was a *bonâ fide* holder for value, and that he was not affected by the settlement. On this point, the answer stated that, before the maturity of the two

notes in controversy, the same were indorsed and delivered to him by said P. S. Chappell & Co., in payment of a debt for about the same amount, which he held against said P. S. Chappell & Co., and for which two other persons were bound; all of whom were thereby released; that, at the time he took the notes, he believed that Chappell & Co. had, as they did in fact have, the lawful right and title to them; that said notes were made payable in New Orleans, and were negotiable in the Union Bank of that city; that he owned them at the time they fell due, and had them protested for non-payment. The respondent filed, as exhibits to his answer, the two notes in controversy, also the instrument of protest, from which it appeared that the notes had been indorsed by P. S. Chappell & Co. before their maturity.

The deposition of a witness for the respondent was also taken, which established that the indorsement by Chappell & Co. to White was made before the notes became due.

White afterwards obtained leave to amend his answer by making it a cross-bill, in which he sought a decree in his favor for the amount of the notes. No answer was required to this cross-bill, and it was agreed by counsel, that if the complainants were not entitled to relief on their original bill, that a decree should be rendered for respondent, as prayed for in his cross-bill.

Upon final hearing, the chancellor dismissed complainants' bill, and decreed for White, according to the prayer of his cross-bill; and from this decree the complainants appealed.

*George S.* and *W. S. Yerger,* for appellants.

1st. The defendant, in his answer, alleges, as a matter of avoidance, that the two notes were given for a valuable consideration, viz., that they were given in discharge of a debt owing to the defendants, and two other persons bound with him.

Upon general principles, where a maker has paid a note, and has had no notice of a transfer, the holder must prove the *consideration* he gave for the note.

The mere indorsement would be as against the maker *prima facie* evidence in the first instance.

But when he *proves* a payment to the original payee, it then devolves on the *holder to prove that he was a purchaser for value.*

If he does not, he fails to make out his case. So a purchaser for valuable consideration, without notice, must prove what he gave for the land as against a prior equity. The mere exhibition of the deed will not do.

Here the answer sets up in *avoidance* of the plaintiff's *claim of payment* (which the answer admits), the defence that he *bought the notes before due, and paid value for them.* This he must PROVE. The answer is not EVIDENCE for him on this point. *Hart* v. *Ten Eyck,* 2 John. Ch. Rep. 62; *McNemara* v. *Irwin,* 2 Dev. & Batt. Equity Rep. 19.

There can be no doubt that the payment of a note without its *delivery* is a good payment, and will prevail in our State against any assignee; and where a note is transferred, and *paid* without notice of its transfer, it is a good payment at common law, except as against a purchaser before due, and for a valuable consideration. *Allen* v. *Agricultural Bank,* 3 Sm. & Mar. 48.

Where there is no consideration for a note, or fraud in obtaining it, or *payment* of it after a *transfer,* the *actual consideration of the transfer must be proved.*

The indorsement is *prima facie* sufficient until the fraud or *the payment is proved;* then the other party must prove the *actual consideration. Mann* v. *Lent,* 1 Moody & Malk. 240; *Green* v. *Deaker,* 2 Starkie, 347; *Heath* v. *Lawson,* 2 B. & Ad. 291, 4 Adol. & Ell. 871; Story on Bills, sect. 193; Bayley on Bills, ch. 12, p. 529, 531 (5th ed.); Chitty on Bills, ch. 6, sect. 3, p. 277, 284 (ed. 1833).

This is the general rule of law, but it is settled conclusively to be so in Louisiana, where *the notes were made payable.*

There the plaintiff, an indorsee, must *prove* the *consideration* he *gave* for the notes, where the defendant sets up a good defence against the payee. *Bowen* v. *Viel,* 6 Martin La. R., New Series, 566; *Morgan* v. *Yarborough,* 13 Louisiana, 74.

The note being made payable in Louisiana, is subject to the law of that State. 9 Sm. & Mar. 220.

But, 2d. The rule of law, as now settled by the best authority, is, that the want of consideration as to the notes affects White, a third party, without notice, to whom the notes had been indorsed, because, as he shows in his answer, the consideration which he gave

for the notes was an *existing debt due* to him by Chappell & Co. and two others.

In the present relations of the parties this is not deemed a *valuable consideration.*

For the confirmation of this view, see the case of *Stalker* v. *McDonald,* in 6 Hill's Rep. 93, wherein Chancellor Walworth reviews elaborately the decision in 16 Peters, 1, for the purpose of showing it fails to sustain the conclusion therein arrived at.

The following authorities are also in point: 20 Johnson R. 637; 16 Penn. State R. 123; 8 Alabama, 920; 2 Humphrey, 192; 6 Mees. & Welsby, 242; 10 Wendell, 85; 9 Ib. 170; 12 Ib. 593; 13 Ib. 606.

The same rules prevail in Kentucky and New Hampshire.

The reason of the rule thus laid down is, that the innocent holder, having given no *new equivalent,* or *incurred no loss,* is not entitled to protection, but must be governed by the general rule of law, that no one has a right to hold against the *true owner.*

To permit such a state of facts to resist the rights of the *true owner* would be manifest injustice, and is not required by any rule of commercial policy. As Lord Mansfield says (in Cowper R. 568), " Shall a man, though innocent, gain by a mistake, or be in a better situation than if the mistake had not happened?" It is sufficient for the holder if he be made secure when he *advances* his funds, or makes himself *liable on the paper he receives.*

The real gravamen of the above principle, then, is, that the holder, White, is *put in no worse situation than before;* and the conclusion irresistibly follows that it makes no difference as to him whether he became holder *before or after the maturity of the notes,* as his situation is the same in either event.

*George L. Potter,* for appellee.

On this proof, a decree was entered dismissing the bill, and ordering an account of amount due defendant; and complainants appeal.

The title of White is not questioned, either by bill or proof. It is not pretended that he did not acquire the notes for value before maturity, and before complainants paid Chappell & Co. The mere charge is, that they paid Chappell & Co., who agreed to deliver up

the notes, and that defendant claims to be the holder of them by indorsement.

The decree is clearly correct. The notes are payable in Louisiana, and the laws of the State govern the case. Story Prom. Notes, § 163–4–5.

Where a contract is to be performed abroad, it is to be governed, "as to its validity, nature, obligation, and interpretation, by the law of the place of performance." Story Confl. Laws, 253, § 280; 2 Kent, 574.

In other words, the case depends on the general law of commercial paper: our statute does not apply. Complainants' counsel admits this, but insists that White must *prove* he is a *bonâ fide* holder; because, forsooth, they paid to one who was not owner or possessor of the notes. In chancery, at least, a defendant need not vindicate his title until it is assailed. They admit White's title, since they do not assail it; but say he ought not to be paid, because they paid Chappell. Which conclusion does not follow at all. If they had alleged payment *before* the transfer to White, there might have been ground to assail his title. But the facts are, that White was owner and holder before the notes matured, and complainants paid Chappell about a year after they were due. Complainants had no equity against the notes at the time of transfer, and Chappell had full right to indorse them to White; and the pretence is that White's title, which was unquestionable in the beginning, has become suspicious because of the *subsequent* transaction between complainants and Chappell. White stands unaffected by an equity created after he acquired title. *Furniss* v. *Gilchrist*, 1 Sandf. Sup. Ct. R. 57.

Mere possession of the notes is *prima facie* proof that White is a *bonâ fide* holder for value, "and to meet this inference so raised, fraud, felony, or some such matter must be *shown*." Story Prom. Notes, § 196; Story on Bills, § 415, 416.

Before the onus is cast on the holder, defendant must show the paper "got into *circulation* by force or fraud." 3 Kent's Com. 92.

Such proof must show that the note was void in its inception, or was lost, stolen, or fraudulently obtained, or wrongfully transferred by some *prior* holder. The evident purpose of such proof is to show that the holder, by reason of such *precedent* matters, acquired no

title, or took under such circumstances that he ought to explain and show he acquired in good faith and for value. All such proof, necessarily, points to the *inception* of the holder's title, and it is clear that proof of subsequent matter would be wholly irrelevant.

A bare denial of the holder's title to negotiable paper does not authorize defendant to question it, unless the paper has been lost or stolen. 14 La. R. 256.

A holder who takes before maturity is not affected by equities. 5 La. Annual R. 33.

When White acquired these notes his title was indisputable, and complainants, if sued at the maturity of the paper, would not have been permitted to show he paid no consideration, as they had no defence when he acquired it. 3 S. & M. 425. What pretence is there to say that the subsequent acts of others have rendered proof of a consideration, necessary to his rights as holder?

Complainants chose to pay, knowing that Chappell & Co. were not then prepared to deliver the notes, and they trusted to their promise to deliver at a future day. At the same time they knew the notes, being negotiable, *might* then belong to a third party; and it happens that it was so. A loss has happened by their laches, and they have no equity to urge against White, or make him bear the consequences of their negligence.

HANDY, J., delivered the opinion of the court.

The facts of this case appear to be that, in the year 1839, the appellants executed three promissory notes to Chappell & Co., of the city of Baltimore, payable in three, four, and five months respectively. Nearly twelve months after the maturity of these notes, the appellants settled and arranged them with Chappell & Co., who delivered up the note first due, and agreed to deliver up the two others upon the appellants executing to them a deed for certain lands agreed to be received in part payment. At the time this settlement was made, the appellants had no notice that the two other notes had been transferred to the appellee. The bill alleges that the appellee claims to be the holder of these notes by indorsement from the payees, and in consequence of the payment to the payees, prays that they may be decreed to be delivered up by the appellee and cancelled.

The answer states that the appellee took the notes by indorsement of the payees before their maturity, in payment and discharge of a debt he held against them, and long before the arrangement in regard to them made between the appellants and Chappell & Co., and insists upon his right to recover upon the notes as a *bonâ fide* holder. The notes are exhibited with the answer, and are made payable at New Orleans, in the State of Louisiana.

The decree being in favor of the defendant, the complainants bring the case up by appeal.

1. It is contended that it is incumbent on the appellee to prove that he took the notes before maturity, and for a valuable consideration, inasmuch as the makers paid them to the payees to whom they were payable by their terms.

This position is wholly untenable with reference to the facts here presented. The notes, being payable in Louisiana, are, of course, governed by the rules of the commercial law which prevail in that State. By these rules, the holder of negotiable paper is presumed to be a *bonâ fide* holder for valuable consideration, until something be shown in disparagement of his title; and he is not bound to show that he has given value for the paper, or that he took it before maturity, until the adverse party has shown the want, or failure, or illegality of the consideration, or that it was lost or stolen from the rightful holder, or that the holder came to the possession of it fraudulently. Possession of the paper duly indorsed, *prima facie* implies title, which casts the burden on the other party, to show that he is not entitled to recover upon it. Story Prom. Notes, § 196.

Here no circumstance whatever is shown to cast suspicion on the appellee's title, except the fact that the makers thought fit to pay the notes to the payees, without requiring them to be delivered up, and that a long time after their maturity, and after they had become, in presumption of law, the property of the appellee. It would be plainly absurd to suppose that the mere payment, under such circumstances, could at all affect the right of the real holder, or impose anything upon him to be shown to substantiate his title. Such an act, instead of being the foundation of any right against the holder, goes only to show gross negligence.

2. It is said that the appellee is not a *bonâ fide* holder, because

he took the notes for an antecedent debt. But it appears that the debt was discharged and extinguished, and that collateral parties, who were bound for it, were released. This has been held, by this court, to be a sufficient consideration, in conformity with the rule, which is very generally admitted now to be the correct rule in cases where the precedent debt has been released. *Taylor* v. *Love*, 26 Miss. 567.

Let the decree be affirmed.

