### First Nat. Bank of Meridian *v.* A. Strauss.

1. Bank, Insolvency.  *Fraud in receiving paper.  Rescission.*

   One who indorses a draft and deposits it with a bank,which at the time is known by its officers to be hopelessly insolvent, may, in order to protect himself, on discovering the insolvency, rescind the transfer and stop payment of the paper.

2. Bona Fide Holder.  *Paper received as security.*

   Receiving property merely as security for a pre-existing debt does not constitute the holder a purchaser for value : and, by reason of our non-commercial statute, the same rule applies in this state to bills of exchange and notes taken as security for a debt.

3. Bank Receiving Paper for Collection.  *Right of owner.*

   In this state where one bank sends to another a draft for collection, duly indorsed, the receiving bank does not become a purchaser of the paper for value, although the forwarding bank is indebted to it on account of collections and has failed after the paper is sent.  In such cases the real owner of the paper, who deposited it with the sending bank, although having indorsed it to that bank, is entitled to stop payment of the draft, or to recover the proceeds if it has been paid.

From the circuit court of Lauderdale county.

Hon. S. H. Terral, Judge.

The facts are stated in the opinion of the court.

*R. P. Williams,* for appellant.

The court below determined the case adversely to the bank on the theory that Gattman & Co. got no title to the draft, because, being insolvent, it was fraud on their part as against Strauss, to discount the draft.  We think this conclusion wrong.  The fact of insolvency may be considered with other facts tending to establish fraud ; but we cannot conceive a case where the bare fact of insolvency of the buyer would constitute a fraud on the seller.  Nothing in the record supports the conclusion of the court, unless the fact of insolvency will do it.  Gattman & Co. made no representations at the time they purchased the paper.  They kept nothing from Strauss that the law required them to disclose.  Meyer Gattman's going to Canada did not aid the fact of

insolvency ; it is not shown that he carried a cent with him, or that. the condition of the firm was changed by his going. It is not shown that the other partners remaining in the bank knew that it was insolvent when the draft was purchased ; on the contrary, Mr. McFarland, the expert who examined the books, was of opinion that they did not know it.

We think that the weight of authority is that the purchaser must have known himself to be insolvent, *before the fact of insolvency can be considered* in determining whether or not there has been fraud. How was Strauss defrauded when the proceeds of the draft were placed to his credit, subject to his immediate check ? It was precisely as if he had sold the draft to Gattman & Co., got the money and deposited it in bank. If this had been done, it could not be contended that Strauss had any claim to the funds or the draft, even in the hands of Gattman & Co.

There is a wide distinction between the contract of a bank for the future payment of money, and that where the money is deposited subject to check. It is hard to conceive how a bank could be guilty of fraud in the latter case, unless the deposit by the creditor and the closing of the bank were simultaneous acts. See *Lake* v. *Hughes,* 63 Miss. 552 ; 49 Am. R. 235 ; 55 Mich. 379.

We invite attention to the testimony of W. W. George, vice-president of the First National Bank, plaintiff, showing the custom that existed between the two banks, in reference to collections sent by one bank to the other. Gattman & Co. were indebted to the First National, and the understanding was that all collections sent by them to the latter should be entered to their credit and to the liquidation of any debt they might owe the other bank, and *vice versa.* Appellant is the owner of the paper for value, without notice of any claim of Strauss, and its claim must prevail.

*Witherspoon & Witherspoon,* for appellee.

1. The deposit of the draft by Strauss and his indorsement thereof were obtained through fraud. This finding of the judge, which has the same effect as would the verdict of a jury, is not manifestly wrong. On the contrary, the facts show conclusively that fraud was used to get the draft. The insolvency of the Gatt-

mans for twelve years ; the flight of Meyer Gattman to Canada ; the knowledge of the insolvency by the other partners, for they must have known the hopeless condition of the bank ; the reception of the deposit without disclosing their insolvency, when they knew Strauss believed the bank rich—all this shows a clear case of fraud, and supports the finding of the judge, without even a conflict in the evidence. This entitled the depositor to reclaim his draft or its proceeds. *Craigie* v. *Hadley*, decided by the court of appeals of New York, May 5, 1885, 1 N. E. Reporter 537 ; 67 N. Y. 598.

The remaining partners managing the bank could not have been ignorant without imputing to them gross inattention to their duties. No authority has been, or can be shown holding that the reception of a deposit by an insolvent bank without disclosing its insolvency to the depositor is not such a fraud as entitles him to reclaim his deposit.

The case of *Hughes* v. *Lake*, 63 Miss. 558, relied upon by opposite counsel, is wholly unlike this case. Here the court held that a banker might be guilty of a felony in violating § 2814, code 1880, and still not be liable to attachment for fraudulently contracting a debt. If Strauss had sued out an attachment against Gattman & Co. on this ground, it would have been necessary to prove that they never intended to pay him, as held in *Hughes* v. *Lake*, and in *Marqueze* v. *Sontheimer*, 59 Miss. 430. But we are not required to bring this case within the provisions of the attachment law. As well seek to apply the laws of burglary in an action of replevin.

The right of rescission is as clear for a fraudulent concealment as for an actual intent or a positive representation of a material fact. We contend, however, that the facts show an actual intent on the part of Gattman & Co. to defraud the claimant. In *Hughes* v. *Lake* the jury found that there was no intent to defraud, while here the judgment on the facts in favor of the claimant includes the finding that there was such intent.

The case of *Dickerson* v. *Wason*, 47 N. Y. 439 (s. c. 7 Am. R. 455), in its facts is very similar to this, and we ask the court to read it.

2. The paper was merely indorsed to the First National Bank for collection, and it became an agent for that purpose and had no right to sue on the draft. It had no title, and hence the suit must fail.

But, conceding that this is a case where the appellant, an agent, might sue in its own name, it is well established that any defense we might have against Gattman & Co., the principal, would be good against the agent. 1 Wait's Ac. and Def. 281, and authorities there cited.

The appellant did not advance a cent on this draft, but claims the right to appropriate the proceeds to the payment of its old debt against Gattman & Co., and this, too, when the Gattmans owe Strauss four hundred dollars. The case stands as if Gattman & Co. had brought the suit. How could they stand up in a court of justice and claim this money, in the face of the fraud by which they obtained the draft, and of the violation of the contract by which they received it? The judgment should be affirmed.

COOPER J., delivered the opinion of the court.

Strauss, a merchant in Aberdeen, Mississippi, on the 16th day of March indorsed in blank and deposited with Gattman & Co., bankers, a draft drawn on Metzler at Meridian, receiving credit on his pass-book for the amount of the same, less the fee for collection. Gattman & Co. were at that time largely insolvent and had been for more than two years, but of this fact Strauss had no knowledge or suspicion. Gattman & Co. indorsed the draft to the First National Bank of Meridian "for collection for account." On the 17th day of March (Saturday) Gattman & Co. transacted business and their doors were not thereafter opened. Strauss, learning of their failure, telegraphed Metzler not to pay the draft, and acting on this advice he permitted it to be protested. Suit having been brought against him, he deposited the money in court, and Strauss intervened as claimant. In the court below a jury was waived and the cause submitted to the judge, who awarded the money to Strauss, from which judgment the Bank of Meridian, plaintiff, appeals.

The plaintiff contends, first, that Strauss sold the draft to Gattman & Co., and is therefore not entitled to the money due thereon; and, if mistaken in this, then, that it is a *bona fide* purchaser for value and entitled to the money to be credited on the balance of account due it from Gattman & Co.

The finding by the court in favor of the claimant includes, of necessity, the finding of the fact that the deposit was received by Gattman & Co. under such circumstances as to warrant the claimant in rescinding the transfer of the draft for fraud, and on the facts disclosed we concur in the conclusion so reached by the court.

Gattman & Co. were at the time irretrievably insolvent; the bank had been really insolvent for years, and at the time of the deposit by the claimant, one of its members had absconded; the concern was tottering to fall, and it is inconceivable that the managing partners who remained in charge were not informed of its hopeless condition. The interval is as broad in law as in morals, that separates the condition of him who, though involved in financial straits, has a *bona fide* hope or expectation of retrieving his situation, and prosecutes his business for the honest purpose of so doing, from that of him who, financially destroyed, conceals his own ruin, and recklessly and fraudulently plunders the unwary and trusting, who may be drawn into his toils.

Where the condition of a bank is so hopelessly insolvent that one of the managing partners absconds, and the other, with equal opportunities for information touching its condition, continues to receive deposits, it does not devolve upon depositors, seeking to rescind a sale of paper to the bank, to show that the remaining partner was privy to the flight of the other. The fraud may be sufficiently proved by showing that the circumstances were such that the managing partner must have known the hopeless condition of the bank, and that in the course of business the sum credited to the depositor could not be paid.

The Bank of Meridian was not a purchaser of the draft, and is not entitled to its proceeds to be credited on the debt due to it by Gattman & Co.

In *Bank of Metropolis* v. *The New England Bank*, 3 How. 212,

it was decided by the supreme court of the United States that where the collecting bank has no notice that the remitting bank is not the owner of the paper remitted, and upon the credit of such remittances made *or anticipated* in the usual course of business between them, balances are from time to time suffered to remain in favor of the remitting bank to be met by the proceeds of such paper, then the collecting bank is entitled, even as against the real owner, to retain the proceeds of such paper for the balance of account due it by the remitting bank.

In New York the contrary rule is announced. *McBride* v. *Farmers' Bank,* 26 N. Y. 454 ; *Dickerson* v. *Wason,* 47 N. Y. 439. As is pointed out by Mr. Daniels (Dan. on Neg. Inst. 336 *et seq.*), the difference in decisions springs from the fact that in one case the collecting bank is held to be a *bona fide* purchaser for value, while in New York, receiving negotiable paper in payment of, or as security for an antecedent debt, does not constitute the receiver a purchaser for value. In this state it is well settled that receiving property merely as security for a pre-existing debt does not constitute the holder a purchaser for value. *Pack* v. *Harney,* 4 S. & M. 255 ; *Pope* v. *Pope,* 40 Miss. 517 ; *Perkins* v. *Swank,* 43 Miss. 349 ; *Hinds* v. *Pugh,* 48 Miss. 268 ; *Brooks* v. *Whitson,* 7 S. & M. 513.

Otherwise, if the thing be taken in discharge of · the debt, or if other security be surrendered in consideration thereof. *Taylor* v. *Love,* 26 Miss. 567 ; *Emanuel* v. *White,* 34 Miss. 56 ; *Upshaw* v. *Hargrove,* 6 S. & M. 286 ; *Bank of Manchester* v. *Lewis,* 13 S. & M. 226. So also an agreement to forbear suit for a definite time. *Turner* v. *Brown,* 3 S. & M. 425. But a mere forbearance, in the absence of any obligatory agreement therefor, is no consideration. *Brown* v. *Prophit,* 53 Miss. 649 ; *Keirn* v. *Andrews,* 59 Miss. 39.

It is said that the great weight of authority, in the United States and in England, is that one who accepts negotiable paper before maturity, as security merely for a pre-existing debt, is a holder for value, but that there is some diversity of opinion even among the English courts. The authorities are collected by Mr. Randolph in his work on Commercial Paper, vol. 2, p. 26.

The reason of the rule declaring such holders to be holders for value is the sanctity of negotiable paper and the policy of leaving it unfettered in commercial transactions. But it can find no application in this state where by express legislative provision negotiability (in the sense in which the word is used in the law merchant) is withdrawn from all bills of exchange and promissory notes, except those payable to bearer.

As to all bills and notes (other than those payable to bearer), it is provided that " the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and sets-off, made, had, or possessed against the same, previous to notice of the assignment, in the same manner as though the suit had been brought by the payee."

It is true this has relation only to defenses existing as between the parties to the instrument and in reference to its consideration, or payment, or sets-off against it ; but the effect of the law is to so thoroughly deprive such paper of its ordinary character in the law merchant, as to render inapplicable a principle that springs from such character alone. We are therefore of opinion that the bank of Meridian was not the holder of the draft for value, and that its possession did not preclude the claimant from rescinding its sale to Gattman & Co. for fraud.

*The judgment is therefore affirmed.*