# CHARLESTON.

R. C. ALLEMAN et al. v. T. J. SAYRE, REC'R. ETC. et al.

Submitted February 27, 1917.   Decided March 6, 1917.

1. EQUITY—*General and Joint Demurrer—Effect.*

   A general and joint demurrer of two or more defendants to a bill in equity showing a cause of action against some of them, does not reach the question of the propriety of the joinder of one of them.   (p. 765).

2. BANKS AND BANKING—*Commissioner of Banking—Suit Against Receiver.*

   Leave of the Commissioner of Banking, to sue a receiver of an insolvent bank, appointed by him, is not essential to the institution or maintenance of a suit against him.   (p. 765).

3. SAME—*Receiver—Preference—Parties.*

   The general creditors of an insolvent bank are not necessary parties to a suit against the receiver thereof, having for its purpose establishment of a right of preference in payment out of the assets of the bank in his hands.   (p. 766).

4. EQUITY—*Parties—Creditors.*

   Having no title to the assets nor any lien thereon, such creditors are not persons interested in the subject matter of the suit, within the meaning of the equity rule requiring all persons so interested to be made parties.   (p. 766).

5. BANKS AND BANKING—*Deposits—Checks—Effect..*

   Entries made by a bank officer, on the deposit of a check, draft or other similar paper, importing creation of the relation of debtor and creditor between the bank and the depositor, prove, in the absence of evidence to the contrary, an assignment of the instrument deposited, to the bank; but they are provisional, and such assignment subject to the right of rescission, in the absence of circumstances precluding exercise thereof, and the relation of debtor and creditor is not irrevocably established until the money for which the deposited paper calls has been actually collected.   (p. 767).

6. SAME—*Deposits—Agent for Collection—Return of Check.*

   If, before such collection has been made, the bank fails and closes its doors to business, it is deemed in law to have been the agent of the depositor for collection of the money evidenced by the deposited paper, in the absence of circumstances precluding restoration of the *status quo* by the depositor, and the latter, on

making such restoration, is entitled to have the paper returned to him, on demand therefor before collection by the receiver, and to have the full amount collected thereon, if the receiver has collected it before such demand is made.  (p. 769).

7.  SAME—*Deposits—Receiver—Dividend.*
Acceptance of a dividend from the receiver, on such a demand, after it has been made and while the depositor is insisting upon payment of the claim as one entitled to preference, is not a waiver of the right of preference, nor does it estop the latter from assertion thereof.  (p. 770).

Error to Circuit Court, Jackson County.

Proceding by R. C. Alleman and another against T. J. Sayre, receiver, etc., and others.  Decree denying plaintiff's right of preference in distribution of assets, and they appeal.

*Reversed in part, and decree for plaintiffs.*

*Warren Miller* and *N. C. Prickett,* for appellants.

*J. L. Wolfe* and *T. J. Sayre,* for appellees.

POFFENBARGER, JUDGE:

The alleged vice in the decree appealed from, is its denial of the plaintiffs' claim of right to preference of the debt due them, in the distribution of the assets of an insolvent bank, on any of the four grounds asserted as bases of the claim, namely, (1) insolvency of the bank, on the date of the deposit; (2) fraud on the part of the cashier in receiving the deposit with knowledge of the insolvency of the bank; (3) non-collection of the check deposited, before closure of the bank; and (4) the character of the deposit, the plaintiff claiming it to have been special.

There is but little controversy as to the facts.  At about twenty minutes before noon of May 14, 1915, the plaintiffs deposited in the Bank of Ravenswood, their certified check for $750.00, drawn on the First National Bank of Parkersburg, in favor of a member of their firm, and, at the same time, obtained a certified check from the Bank of Ravenswood for $576.35, drawn by themselves, in favor of the Town of Ravenswood, and, on the next day, May 15, 1915, at about

eight o'clock A. M., an assistant state banking commissioner took full charge and control of the assets and affairs of the bank and closed it, because of its insolvency, and irregularities in the management thereof. The occasion of the deposit of the larger check and procurement of the smaller one, was the purpose of the depositors, Alleman and Alleman of Parkersburg, W. Va., to file the latter with their bid for the contract for the construction of certain sewers for the town of Ravenswood. The contract having been let to some other person or firm, the check they filed with the city authorities was returned to them. The assistant banking commissioner, finding the check of Alleman and Alleman for $750.00 among the other papers of the bank, endorsed it, collected it through the Jackson County Bank and paid it to T. J. Sayre, receiver of the Bank of Ravenswood, appointed by the state banking commissioner. On June 7, 1915, Alleman and Alleman returned their check on the Bank of Ravenswood to the receiver thereof, for cancellation, and it was cancelled by him and returned to them, June 11, 1915. A twenty-five per cent. dividend was distributed among the creditors of the bank, January 18, 1916, in which Alleman and Alleman shared to the extent of $187.50, which was credited on their claim of $750.00.

The sufficiency of the bill making the receiver, the commissioner of banking and one James M. Wease, another depositor claiming a right of preference, parties defendant, was challenged by demurrer, on four separate grounds: (1) misjoinder of the commissioner of banking; (2) institution of the suit against the receiver, without the consent of the commissioner of banking; (3) non-joinder of the creditors and depositors of the bank; and, (4), disclosure on the face of the bill, of the receiver's admission of the bank's indebtedness to the plaintiffs in the amount claimed.

None of these positions are well taken. If the commisisoner of banking is an improper party, it would have been the duty of the court to dismiss the bill as to him, on his separate demurrer thereto; but the general and joint demurrer of all of the defendants did not reach such an objection.

The statute, sec. 81a VIII, ch. 54, Code of 1913, ser. sec.

3058, impliedly sanctions a suit against the receiver of an insolvent bank, appointed by the commissioner of banking, and it omits any requirements of an application to the appointing officer, for leave- or consent to institute such a suit. It makes it the duty of the receiver, on the order of the commissioner to pay ratable dividends of the money in his hands, on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction. The status of a receiver appointed by an executive officer is not analogous to that of one appointed by a court in a judicial proceeding, for the latter is under judicial control and the property in his hands is actually subject to judicial power. An unauthorized suit against him would be an encroachment upon the court's jurisdiction of the subject matter of the suit in which he was appointed. For these reasons, a receiver appointed by a court cannot be sued without leave of the appointing court. In the case of a receiver appointed by an executive officer, pursuant to law, the property he takes charge of has not been brought within the jurisdiction of any court, by procedure against it. There is no seizure or attachment of the judicial power. The commissioner having the power of appointment is an executive officer and the receiver appointed is a state officer of subordinate authority, charged with duty of administration of the funds in his hands, in acordance with law. Such is the status of a receiver of a national bank, appointed by the comptroller of the currency. *Stevens* v. *Bernoys,* 44 Fed. 835; *Price* v. *Abbott,* 17 Fed. 506; *Thompson* v. *Pool,* 70 Fed. 725. Whether he is technically an officer or not, he is subject to judicial control in the execution of his powers, and is not himself a judicial officer. Both he and his chief must obey and execute the law as interpreted and applied by the courts, and the reason for requiring procurement of leave from a court, to sue its receiver, wholly fails in his case.

The third ground of demurrer involves an erroneous assumption respecting the relation of general creditors to the assets of the bank. They are not interested in the subject matter of the suit, within the meaning of the equity rule requiring all interested persons to be made parties. They have

no title to the assets nor any lien thereon.    The receiver holds
the title as fully and completely as an administrator holds
that of the personal estate of a deceased person.    *Scott* v.
*Armstrong,* 146 U. S. 499, 507; *Bank* v. *Colby,* 21 Wall. (88
U. S.) 609; *Bank* v. *Bank,* 136 U. S. 223; *Bank* v. *Bank,* 141
Ind. 352; *Hayes* v. *Kenyon,* 7 R. I. 136; *McGregor* v. *Bank,*
124 Ga. 557; *Weslosky* v. *Quarterman,* 123 Ga. 312.    Though
the assets constitute a trust fund for the benefit of the credi-
tors, the receiver's plenary power and authority over them
make him a complete administrator thereof.    It is his duty
to find the creditors and their duty to present their claims to
him.    He must resist all invalid claims of preference, attack
all fraudulent conveyances and transfers and protect the
assets in the interest of the general creditors.    If such a credi-
tor's right of participation is denied, he has a remedy, of
course, but he can have nothing to do with the administration
of the assets, in the absence of a disclosure of some failure of
duty on the part of the receiver, working injury to him.
Until the contrary is shown, the receiver must be deemed
and held to represent his remote interest fully and completely.
As to the last ground of demurrer, it suffices to say the bill
discloses no admission of the claim of preference it sets up,
by the receiver.

Right of recovery on the ground of the admitted non-col-
lection of the check deposited, before the bank was closed,
and the theory of a relation of agency on the part of the
bank, for collection of the check, at the date of the failure,
and termination of that agency and authority, by the failure,
is opposed by the contention that the deposit made in the or-
dinary form and the certification of the check drawn against
it, legally and necessarily passed the title of the check depos-
ited, and, therefore, created the relation of debtor and credi-
tor between the depositor and the bank.    Assuming insuffi-
ciency of the evidence to prove any contract or agreement
other than that imposed by the entries made, without deciding
it, and conceding effectuation of an assignment of the instru-
ment deposited, the relation of debtor and creditor is not nec-
essarily established by the transaction.    Some authorities hold
that it is.    *Bank* v. *Fuel Company,* 58 Minn. 141; *Brusegaard*

v. *Ueland,* 72 Minn. 183; *Bank* v. *Manufacturing Co.,* 150
Ill. 336; *Showalter* v. *Cox,* 91 Tenn. 550; *Vaughn* v. *Bank,*
126 S. W. 690. Readily conceivable circumstances would
make the assignment irrevocable, and they may have done so
in some of the cases disposed of upon the assumption of the
controlling force of the assignment. But, its controlling in-
fluence in all cases would be obviously inconsistant with
well settled principles of law. There are grounds upon which
almost any sort of a contract may be rescinded and the right
of rescinssion belongs to the injured party. There is noth-
ing in the character of a bank which necessarily absolves it,
on all occasions, from the influence of this principle, nor on
any occasion, unless its effect would be to contravene or over-
throw some principle of commercial law. If the depositor is
indebted to the bank, at the time of the assignment repre-
sented by the entry of the deposit, the assignment ought to
be irrevocable to the extent of the indebtedness. If, at the
time of the making of the deposit, or afterwards, he should
draw checks against it and put them in the hands of inno-
cent holders, so as to make the bank liable, or in some way in-
duce it to incur liability in reliance upon the deposit made,
the assignment ought to be irrevocable. But, in the absence
of such circumstances, rescission of the contract works no such
change in the situation of any person, as will cause him loss or
injury. If the bank can be put in *statu quo,* it is not hurt,
nor are its depositors. Even though a check has been drawn
against the deposit and certified, if the depositor repossesses
himself of it and relieves the bank of liability thereon, in
the exercise of his right of rescission, before the deposited
check has been actually collected, there is neither a technical,
nor a substantial, reason for denying the right on his part
to treat the money collected on the check or draft, after the
bank has closed its doors, as a trust fund belonging to him.
His deposit is based upon an assumption of the bank's sol-
vency. That assumption is the basis of the whole transaction.
Failure thereof is loss of the real inducement. There could
be no firmer basis of the right of rescission. An executed
sale of goods may be practically rescinded by a stopage *in
transitu,* on such ground, though the transaction is not gen-

erally classed as one of rescission. 2 Kent's Com. 702. Failure of consideration relieves from a note or bond and may be ground for setting aside a deed, if the consideration is a covenant. Accordingly, it is held by the great weight of authority, that the relation of debtor and creditor is not affected until the deposited check, draft or note has been collected, and that if the collection was not made before the bank was closed, the relation at the date of the insolvency, was that of principal and agent for collection. *Armstrong, Receiver* v. *Bank,* 90 Ky. 431; *Commercial Bank* v. *Armstrong,* 148 U. S. 50; *Bank* v. *Bank,* 2 Wall. 252; *Jones* v. *Kilbreth,* 5 Dillon 104; *Richardson* v. *Coffee Co.,* 43 C. C. A. 583; *Bank* v. *Strauss,* 66 Miss. 479; *Gingnon* v. *Bank,* 22 Mont. 140; *Higgins* v. *Haydon,* 53 Neb. 61; *Blake* v. *Bank,* 12 Wash. 719; Bolles, Modern Banking, p. 194; Michie, Banking, pp. 1417, 1420.

Plaintiffs had power to restore the *status quo* and did so. They returned the check drawn on the insolvent bank. Indeed, it was drawn for a temporary purpose and with no intention that it should ever be paid. One of the plaintiffs says it would have been returned on the day of its issue and the whole transaction with the bank then terminated, but for an accident, and that failure of the bank on the next day prevented the settlement.

The right of recovery asserted here is unembarrassed by the difficulty usually found in efforts to recover money collected by the bank, before it closed. In that class of cases, it is sometimes impossible for the depositor to prove the presence of his money in the bank at the date of the failure, and, in order to recover, he must do that. Michie, Banking, p. 1428; Bolles, Modern Law, Banking, pp. 188, 193. That the money represented by the check deposited by the plaintiffs was collected after the bank had failed, and went into the assets in the hands of the receiver, are admitted facts. Right of recovery does not depend upon the plaintiffs' ability to prove possession of the identical money collected. It is only necessary to show that the money went into the hands of the receiver, or was in the bank when it closed. That being done, there may be a judgment or decree for an equivalent sum.

It is hardly necessary to say a deposit of actual money would be governed by principles somewhat different from those here enunciated. Ordinarily, the relation of debtor and creditor is established, the moment the deposit is made.

No element of waiver or estoppel is found in the acceptance of the dividend. Though the receipt given therefor makes no express reservation of right, it refers to the claim the plaintiffs had filed, and it was filed as a preferred claim. The right of preference was insisted upon strenuously, from the beginning. As plaintiffs were entitled to payment of their claim in full, acceptance of a partial payment manifestly injured no one. *Importers and Traders Bank* v. *Peters,* 123 N. Y. 272.

As the plaintiffs are entitled to the relief they seek, on the ground here indicated, there is no occasion to say whether any of the other grounds therefor, alleged in the bill, are well founded or not.

In so far as the decree complained of denies the plaintiffs right of preference in the distribution of the assets of the bank and confines them to a *pro rata* share thereof, and awards costs to the defendants, it will be reversed, and it will be here adjudged, ordered and decreed that the receiver pay to them, out of the funds remaining in his hands as such, the sum of $609.27, with interest thereon from the 29th day of June, 1916, the date of the decree appealed from, together with their costs in the court below as well as in this court.

*Reversed in part, and decree for plaintiff.*