## In re United Security Trust Company

*Townsend, Elliott & Munson,* for exceptant.

*Arthur Hagen Miller,* for Department of Banking.

MacNEILLE, J., July 8, 1933.—A claim was filed by the First Penny Savings Bank Philadelphia with William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the business and property of the United Security Trust Company, for a refund in full of the sum of $4,006.24, representing the proceeds of checks which were left for deposit at the United Security Trust Company, which claim was disallowed as a preferred claim by the Secretary of Banking of the Commonwealth of Pennsylvania in his first

and partial account which was filed on December 9, 1932, and to the disallowance of this preferred claim exceptions were filed on behalf of the Western Saving Fund Society of Philadelphia to which the claim was subsequently assigned.

From the agreed statement of facts submitted it appears that on Saturday, October 3, 1931, between 12 o'clock and 1 p. m., the First Penny Savings Bank Philadelphia deposited in its checking account with the United Security Trust Company the sum of $4,006.24, which deposit consisted of checks on various banking institutions and checks drawn on the Treasurer of the United States of America; that $1,850.94 of these checks were drawn on banks which were not members of the Philadelphia Clearing House Association, and the balance of the checks in the sum of $2,155.30 were drawn on banks which were members of the Philadelphia Clearing House Association; that the checks which were drawn on banks which were not members of the Philadelphia Clearing House Association were deposited by the United Security Trust Company on October 3, 1931, with the Philadelphia National Bank, which bank gave the United Security Trust Company credit in the amount of said checks, to wit, $1,850.94, on October 3, 1931, on which day the United Security Trust Company was indebted to the Philadelphia National Bank in the sum of $548,666.50.

The United Security Trust Company never opened for business on Monday, October 5, 1931, and possession of the same was taken by the Secretary of Banking of the Commonwealth of Pennsylvania. After possession was so taken, the checks aggregating $2,155.30, drawn on the banking institutions which were members of the Philadelphia Clearing House Association were not put through the Philadelphia Clearing House but were collected at the various banks on which they were drawn on October 5, 1931, by payments of cash against the checks, and subsequent to the closing of the trust company the First Penny Savings Bank Philadelphia assigned its claim to the Western Saving Fund Society of Philadelphia.

While the deposit was made on Saturday, October 3, 1931, it was entered in the depositor's bank book as of October 5, 1931, and on the records of the bank the deposit was entered as of October 3, 1931.

As to the $2,155.30 in checks which were in the United Security Trust Company at the time the Secretary of Banking took possession of the said trust company on October 5, 1931, it is clear that the claimant was entitled to have them or their proceeds returned to it.

Section 2 of the Act of June 12, 1931, P. L. 568, provides as follows:

"Except as otherwise provided by agreement and except as to subsequent holders of a negotiable instrument payable to bearer or indorsed specially or in blank, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be subagent of the depositor . . . and any credit given by any such agent or subagent bank therefor shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted."

Under the express provisions of the aforesaid act the United Security Trust Company, on October 3, 1931, became the agent of the depositor for the collection of the checks deposited and the credit given to the depositor was revocable until the time the proceeds were received in actual money or unconditional credit, and it was also well settled prior to the enactment of the Act of 1931 that the bank was the agent of the depositor until the checks were actually collected: Hazlett v. Commercial N. Bank, 132 Pa. 118; National Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275; New York Hotel Statler Company, Inc., v. Girard National Bank, 89 Pa. Superior Ct. 537.

The status of every depositor in the bank was fixed as of the time when the Secretary of Banking took possession of the bank on the morning of October 5, 1931. This is the rule with reference to all receivers and bankruptcy proceedings: Blum Brothers v. Girard National Bank et al., 248 Pa. 148; Chambersburg Trust Co. v. Alexander, 102 Pa. Superior Ct. 158; Dean and Son's Appeal, 98 Pa. 101; McDonald v. Williams, 174 U. S. 397.

At the time the Secretary of Banking took possession of the property of the United Security Trust Company, therefore, as to the $2,155.30 of checks which remained at the trust company at that time, as they had not as yet been collected, the bank at that time was the agent of the depositor for their collection, and the credit that was given to the depositor was revocable, the checks belonging to the claimant could easily be segregated and nothing that was done by the agent in charge of the bank after the Secretary of Banking took possession could affect the legal status of the claimant.

Section 13 (a) of the Act of 1931 provides as follows:

"When the drawee or payor, or any other agent collecting bank, shall fail or be closed for business by the Secretary of Banking, or by action of the board of directors, or by other proper legal action, after an item shall be mailed or otherwise entrusted to it for collection or payment but before the actual collection or payment thereof, it shall be the duty of the receiver or other official in charge of its assets to return such item, if same is in his possession, to the forwarding or presenting bank with reasonable diligence."

Under this section of the act, inasmuch as the trust company was closed for business by the Secretary of Banking before the actual collection of the $2,155.30 of checks, it was the duty of the receiver, since they were in his possession, to return them to the claimant. These rights of the claimant were fixed at the time the Secretary of Banking took possession and could not be affected by any act of the receiver contrary to the express provisions of the act, and the fact that the agent in charge of the trust company subsequently collected this money can have no effect on the status of the claimant, which was fixed at the time the Secretary of Banking took possession. The Secretary of Banking is a public officer, and when he takes charge of a bank it is imperative that he conduct its affairs in accordance with statutory provisions, and under the express wording of the above section of the act the claimant was entitled to have checks which were still in the bank uncollected returned to it.

Even before the enactment of the Act of 1931, it was well settled, both in our State and in other jurisdictions, where the relation between the depositor and the bank, until the checks are collected, is that of principal and agent, that when there are uncollected checks in the possession of the Secretary of Banking at the time when he takes charge of the bank, the depositor is entitled to a return of the checks or the funds which are subsequently collected.

In the case of Eppinger, Executor, v. Allen et al., Trustees, 8 D. & C. 321, where this very question came before our courts, and which was decided before the enactment of the Act of 1931, the court held as follows:

"When a bank, which becomes insolvent or which makes an assignment for the benefit of creditors or goes into the hands of a receiver, has at that time uncollected paper on hand, its authority to collect is thereby terminated and the depositor is entitled to a return of the paper; if, instead, it is actually collected, the depositor is entitled to a return of the proceeds: Brady, The Law of Bank Checks (1915), § 214; Selover, Bank Collections (1901), § 32; 2 Michie, Banks and Banking (1913), § 166. Numerous cases are to be found in 2 Paton's Digest (1926), §1598a. In 1 Morse on Banks and Banking (5th ed.), § 249a, the rule is stated: 'After a bank has suspended, it ought not to

receive payments upon business paper previously deposited with it for collection; or at least not in such a manner that the money so received by it will pass into its general assets, and the owner of the paper will be placed in the position of one of its creditors, entitled only to take his dividend. . . . Proceeds received after the bank becomes insolvent are held in trust and may be recovered in full.'

"Such is the rule of the Federal courts. See Beal v. Somerville, 50 Fed. Repr. 647 (C. C. A., 1st Cir.); Richardson v. Denegre, 93 Fed. Repr. 572 (C. C. A., 5th Cir.); Richardson v. New Orleans Coffee Co., 102 Fed. Repr. 785 (C. C. A., 5th Cir.); In re Jarmulowsky; 249 Fed. Repr. 319 (C. C. A., 2d Cir.); In re Gubelman, 10 Fed. Repr. (2d) 926 (C. C. A., 2d Cir.), also 10 Fed. Repr. (2d) 935."

In the cases of Hackett v. Reynolds, Lamberton & Co., 114 Pa. 328, First National Bank of Clarion v. Gregg & Co., 79 Pa. 384, and Jones & Co. v. Milliken & Son, 41 Pa. 252, it was decided by our Supreme Court that a depositor could recover from a subagent bank the proceeds of commercial paper which had been forwarded to it by another bank for collection, where the forwarding bank became insolvent after it forwarded the paper to the subagent bank but before the subagent bank had received payment; and in the case of Crane, Parris & Company v. The Fourth Street National Bank, 173 Pa. 566, a similar recovery was permitted under similar circumstances from the payee bank.

In the case of Freiberg et al. v. Stoddard, Assignee, 161 Pa. 259, 266, it was said that:

". . . If at the time of the assignment the plaintiff's notes had been found by the assignee uncollected, he should have returned them. If a draft or bond or a specific package of money received in payment of the notes had been found among the assets coming into his hands, it should have been turned over to the plaintiffs."

The same principle of law is stated in 7 C. J. 625, as follows:

"The insolvency of a bank at once terminates its authority to proceed further and if collections are afterwards made, or those previously undertaken are completed, the proceeds are held in trust for the owners."

In 3 R. C. L. 635, the same principle of law is stated in the following language:

"It is upon this principle that if a collection has not been completed before the collecting bank becomes insolvent, any money thereafter received is the property of the principal, and no change of the relation of principal and agent to that of creditor and debtor can be effected after the insolvency of the bank. And so where paper sent to a bank for collection is not paid before the insolvency of the bank it remains as against its assignee for the benefit of creditors or in bankruptcy the property of the customer, and does not pass to the assignee or receiver; and if it is collected by the assignee or receiver he is bound to account to the customer therefor."

In the case of Balbach and others v. Frelinghuysen, Receiver, etc., 15 Fed. 675, a similar question came before the Circuit Court of the District of New Jersey where a check was deposited on Saturday and the bank failed to open on Monday, and there was an uncollected check in the bank at the time when the receiver took possession. The court there used the following language:

"It was, perhaps, a gratuitous act for the bank examiner to send it forth for collection. . . .

"The naked question is whether, under such circumstances, the right to recall the check remained with the depositors, or whether it had passed beyond their reach. I see no reason, in principle, which should not allow them to recall it. It was their property until collected. If the bank had continued business, and the check had been returned unpaid, it would have been charged up to their account and handed back to them." (Page 684.)

A similar situation, where checks were deposited on Saturday afternoon and the bank closed shortly thereafter, is that of Beal, Receiver, v. City of Somerville, 50 Fed. 647, and there also the Circuit Court of Appeals decided that the depositor was entitled to the return of the checks or money.

To the same effect are the cases of *In re* State Bank, Insolvent, 56 Minn. 119; Manufacturer's National Bank v. Continental Bank, 148 Mass. 553, 2 L. R. A. 699, where the court held (Page 559):

"At that time the right of the Fidelity National Bank to mingle with its own funds the proceeds of a check collected for the plaintiff had terminated"; and Alleman et al. v. Sayre, Receiver, et al., 79 W. Va. 763, 91 S. E. 805, L. R. A. 1917D 1002.

In some jurisdictions in which a contrary view has been taken the decisions are mostly based on the fact that in those jurisdictions it has been held that there is no agency relationship between a depositor and its bank until the funds are collected. The claimant is therefore entitled to recover the $2,155.30 in full.

The exceptions are sustained as to the claim of $2,155.30, and exceptant is allowed priority in that sum.

Sufficient facts do not appear, however, from the agreement submitted in this case to warrant the sustaining of the exceptions to the refusal to permit the $1,850.94 which was deposited at the Philadelphia National Bank to be refunded in full from the money in the hands of the Secretary of Banking.

It does not appear from the agreed state of facts that the Secretary of Banking in charge of the United Security Trust Company ever received all or any portion of the proceeds of these checks, and while it is true that on Saturday, October 3, 1931, the Philadelphia National Bank credited the amount of these checks on the indebtedness to it of the United Security Trust Company, this was a revocable credit under the express provisions of section 2 of the Act of 1931, which was not consummated by the actual collection of these checks before the Secretary of Banking took charge of the trust company, when the rights of the parties were fixed.

In the case of Freiberg et al. v. Stoddard, Assignee, 161 Pa. 259, 264, in speaking of a similar credit, the following language was used:

"When the assignor charged these drafts against the accounts of the drawees he canceled so much of his indebtedness to them, but did not add a dollar to the fund in bank. It is true his estate was benefited by the transaction, because his indebtedness was thereby reduced, but as he was insolvent at the time such benefit to the estate only equaled the pro rata shares which would have been awarded to the drawees on distribution. If a preferred lien or charge upon the fund in bank is to be recognized upon the ground of the benefit received by the estate or fund through the transaction, such lien or charge ought to be measured by the benefit actually received, and not by the benefit which it would have received, if the fund had been increased by a deposit of an amount equivalent to the amount of the drafts."

Possibly the Philadelphia National Bank retained the proceeds of these checks without ever turning them over to the Secretary of Banking in charge of the United Security Trust Company at all, and to compel the depositors in the trust company to repay this money, which the trust company might have never received for all that appears from the stated facts, would not be consonant with justice. Under those circumstances the Western Saving Fund Society of Philadelphia may have a valid claim against the Philadelphia National Bank similar to those which arose in the cases of Hackett v. Reynolds, Lamberton & Company, 114 Pa. 328; First National Bank of Clarion v. Gregg & Company, 79 Pa. 384, and Jones & Co. v. Milliken & Son, 41 Pa. 252. On the

308

other hand, if the actual proceeds of these checks eventually can be traced into the hands of the Secretary of Banking, claimant might be entitled to recover this fund from the Secretary of Banking, as was done in the case of Eppinger, Executor, v. Allen et al., Trustees, 8 D. & C. 321.

Claimant having been given ample opportunity and having failed to submit the necessary data on which these questions could be decided, the claim must be refused as a preferred claim at this time, and the exceptions to the disallowance of the $1,850.94 dismissed without prejudice to the rights of the Western Saving Fund Society of Philadelphia to institute any other proceeding to protect its rights, and with leave to petition this court to reinstate the exceptions if the facts should warrant it at any time before the final distribution of the funds in the hands of the Secretary of Banking in charge of the United Security Trust Company.

### Supplemental opinion

MACNEILLE, J., October 11, 1933.—Since writing the above opinion, the parties in interest have submitted a supplemental stipulation of facts in which it was shown that the total indebtedness of the United Security Trust Company to the Philadelphia National Bank on October 3, 1931, was $655,000; that the Philadelphia National Bank subsequently realized on collateral held by it as security for this indebtedness the sum of $579,988.49; and that of the deposit account of the United Security Trust Company with the Philadelphia National Bank on October 3, 1931, the Philadelphia National Bank applied the sum of $79,564.75 in liquidation of the loan of the United Security Trust Company. Thus, by adding the amount realized on the collateral as set forth herein, namely $579,988.49, and the amount of the deposit account, namely $79,564.75, the Philadelphia National Bank realized a total of $659,553.24, which amounted to $4,553.24 more than the amount of the loan, namely $655,000; and this amount of $4,553.24 was returned to the Secretary of Banking by the Philadelphia National Bank. Under the decisions, the claimant traces the amount of its checks deposited by it with the United Security Trust Company and by it in turn with the Philadelphia National Bank on October 3, 1931, in the sum of $1,850.94, which were collected by the said Philadelphia National Bank subsequent to October 5, 1931, the date on which the trust company was taken in possession by the Secretary of Banking, to this fund: Eppinger v. Allen, 8 D. & C. 321; Mehler's Appeal, 310 Pa. 25; In re Susquehanna Title and Trust Company, 16 D. & C. 530.

It is, of course, impossible to identify one coin from another and the earmark theory in connection with mingled money has long been discarded. The earmark theory survived in England until overthrown by the destructive criticism of Sir George Jessel, M. R., in the leading case of In re Hallett's Estate, L. R. 13 Ch. D. 696 (1879). It was discarded in Pennsylvania in the early case of Farmers' and Mechanics' National Bank v. King, 57 Pa. 202, and has been definitely repudiated by Mr. Justice Kephart in the case of Trestrail v. Johnson, 298 Pa. 388. The rule in the Pennsylvania cases seems to be that a mere showing that the money was paid into a fund or bank account is sufficient tracing, and if this fund is sufficient to pay all other claimants who have filed claims under similar facts the claimant should be awarded priority in the sum of $1,850.94. The exception as to the disallowance of the $1,850.94 as a priority claim is therefore reinstated, and as according to the stipulation filed the excess is sufficient to meet this and all similar claims the exception is sustained and the claimant allowed priority over depositors and general creditors in the sum of $1,850.94.